## CALLANAN *v.* HURLEY.

1. A treasurer's deed for lands sold for delinquent taxes in the State of Iowa, if substantially regular in form, is, under the statutes of that State, at least *prima facie* evidence that a sale was made; and, if there was a *bona fide* sale, in substance or in fact, the deed is conclusive evidence that it was made at the proper time and in the proper manner.
2. In a case where a tax-deed, regular in form, recited that the land was sold Jan. 4, and where the treasurer certified that the sales of land for delinquent taxes in the county began on that day, and were continued from day to day until Jan. 18, and that he entered all the sales as made on the 4th, it was *held,* that a sale of land at any time during the period from the 4th to the 18th was valid, and that recording such sale as made on the first day, though actually made later, did not impair the title.

APPEAL from the Circuit Court of the United States for the District of Iowa.

The complainant asserts title to the lands in controversy, by virtue of his having entered them pursuant to the provisions of the act of Congress; and the defendant Callanan claims to be

the owner, by force of tax-deeds of the treasurer of the county of Cass, founded on alleged sales made in January, 1864, for delinquent taxes. These deeds, having been placed upon record, are, as the plaintiff avers, a cloud upon his title, and the object of his bill is to procure their cancellation. He charges that they are void, for several reasons : *First*, that no taxes were levied upon the lands, or any of them, for the years for which they were pretended to be sold; *second*, that the taxes, if any there were, never became delinquent.; *third*, that there was no person authorized to receive payment of the taxes ; *fourth*, that there was no warrant or authority for the sale of the lands for the non-payment of delinquent taxes ; and, *fifth*, that no sale of the land for the non-payment of taxes, real or pretended, ever took place, but that certificates thereof were issued, reciting, contrary to the truth, the sale of the lands conformably to the provisions of the statutes of the State, under which certificates the deeds and conveyances were respectively made. A subsequent amendment of the bill charges, *sixthly*, that at the time of the pretended assessments and levies the lands were not subject to taxation ; and, *seventhly*, that two persons, Reynolds and Mead (through whom the defendant claims), at and before the issuing of the certificates of sale, unlawfully combined and confederated with the defendant for the purpose of preventing competition at the sale of lands for taxes then to be held in the county.

The court below, upon a final hearing, granted the prayer of the complainant's bill, and entered a decree accordingly ; whereupon the defendant appealed to this court.

Argued by *Mr. R. P. Lowe* and *Mr. George G. Wright* for the appellant, and by *Mr. Thomas J. Durant* for the appellee.

MR. JUSTICE STRONG delivered the opinion of the court.

Before examining the objections to the validity of the tax-deeds which the original bill and its amendment suggest, it will be convenient to notice the provisions of the statutes of the State respecting tax sales, and respecting the effect of treasurers' deeds for lands sold for delinquent taxes. They are contained in the Revision of 1860, c. 45. After giving directions for sales of land by the county treasurer for delinquent taxes,

prescribing notice by advertisement, and providing for the cost of advertising, the treasurer is directed to offer separately, on the day of sale, each tract or parcel of real property advertised, on which the taxes and costs shall not have been paid; and it is declared, that the person who offers to pay the amount of taxes due on any parcel of land for the smallest portion thereof shall be considered the purchaser. The treasurer is directed to continue the sale from day to day as long as there are bidders, or until the taxes are all paid; and, after all has been offered, if any portion of the lands advertised remain unsold, the sale is to be adjourned. The purchaser is entitled to a certificate of purchase, describing the property and the amount of the tax; but the land may be redeemed at any time within three years from the day of the sale. At the expiration of three years, if the land remains unredeemed, the purchaser is entitled to a deed from the treasurer, the form and effect of which are defined by the statute. We quote a part of sect. 784 of the act, as having a controlling operation upon the facts of the present case. It is as follows: —

"The deed shall be signed by the treasurer in his official capacity, and acknowledged by him before some officer authorized to take acknowledgments of deeds, and, when substantially thus executed and recorded in the proper record of titles to real estate, shall vest in the purchaser all the right, title, interest, and estate of the former owner in and to the land conveyed, . . . and shall be *prima facie* evidence in all courts of this State in all controversies and suits in relation to the rights of the purchaser, his heirs or assigns, to the land thereby conveyed, of the following facts: —

"1. That the property was subject to taxation.

"2. That the taxes were not paid before sale.

"3. That the property conveyed had not been redeemed at the date of the deed.

"And shall be *conclusive* evidence of the following facts: —

"1. That the property has been listed and assessed.

"2. That the taxes were levied according to law.

"3. That the property was advertised for sale in the manner and for the length of time required by law.

"4. That the property was sold for taxes as stated in the deed.

"5. That the grantee named therein was the purchaser.

"6. That the sale was conducted in the manner required by law.

" 7. That all the prerequisites of the law were complied with by all the officers, . . . except in regard to the *three* points named in this section, where the deed shall be *prima facie* evidence only.

" And in all controversies involving the title under such tax-deed, executed substantially as required by law by the treasurer, the person claiming title adverse thereto, in order to defeat the same, *must* show, either that said property was not subject to taxation, or that the taxes had been paid before sale, or that the property had been redeemed from sale according to law. . . . And no person shall be permitted to question the title under the deed without first showing . . . *that all taxes due upon the property have been paid.*"

The whole act exhibits an intention of the legislature to enforce the payment of taxes, by securing purchasers at tax sales in their purchases, and thus making it dangerous for owners of property to neglect payment of taxes due the State. It removes difficulties which had before existed in the way of establishing a tax-title, and at the same time it works no injustice to owners of land subject to taxation. The law determines when the taxes should be levied, and when they shall be paid, and it gives ample time within which to make the payment. It was under this act, and in conformity with its provisions, that the treasurer's deeds were made, through which the defendant below made his claim. They are in the form prescribed by the statute. If the act is to have any effect at all, it is plain that the deeds cut off most of the averments upon which the plaintiff bases his attempt to obtain the cancellation he seeks. It is not open to him to aver and prove any allegation he puts forward to establish the invalidity of the deeds, except that the property was not subject to taxation, and that there was a fraudulent combination of the defendant with others to prevent bidding. The first of the averments is denied in the answer, and there has been no attempt to sustain it by evidence. Besides, the statute declares that the deeds shall be *prima facie* evidence that the property was subject to taxation. They are made affirmative evidence. The allegation of a fraudulent combination to suppress bidding at the sale is entirely unsustained by any thing in the proofs, and so is every allegation upon which the bill founds the charge that the deeds are invalid, unless it

be the averment that no sale for the non-payment of taxes, real or pretended, ever took place. The treasurer's deeds, however, contain a recital that he did, on the fourth day of January, A.D. 1864, by virtue of the authority vested in him by law, at the sale begun and publicly held on the first Monday of January, A.D. 1864, expose to public sale at the court-house in the county aforesaid (Cass), in substantial conformity with all the requisitions of the statute in such cases made and provided, the several pieces of real property above described separately, for the payment of the taxes, interest, and costs then due and remaining unpaid on each of said pieces of real property, respectively. The deeds further recite, that, at the time and place aforesaid, the persons to whom the deeds were made offered the most favorable bids, and that the several pieces of property were stricken off to them at the prices bid.

Now, if it be conceded that, under the statute, the deeds containing these recitals are only presumptive evidence that the sales were actually made as recited, the burden is still on the complainant to rebut this presumption. And we think that, instead of having rebutted it, the evidence in support of the presumption greatly preponderates. We need not refer to it in detail. Suffice it to say, that there is not a single witness who is able to deny that a sale was made; and only one is able to testify that, ten years after 1864, he cannot recollect it, while others testify affirmatively that it was made. At the treasurer's sale in January, 1864, there were large bodies of land offered; and the sale was continued from day to day. Whether the lands now in dispute were sold on the fourth day of that month, or at a later day during the sale, is, perhaps, not distinctly proved, and it is not necessary that it should be. If they were not sold until several days later, but yet while the sales were in progress, unadjourned, and the treasurer certified them as sold on the opening day, it was at most but an irregularity which cannot avail the complainant. It has not interfered with his right to redeem. He suffered eight years to pass after the sale without asserting any right. During all that period he paid no taxes, performed no duties which he owed to the public, suffered the defendant and those under whom the defendant claims to pay the taxes levied from year to year, and now,

when it may be presumed the land has increased in value, he seeks the cancellation of the tax-deeds, without even offering to redeem or to refund the taxes which the purchasers at the sale have paid. He seeks this in the face of a statute which, in effect, declares that irregularities shall not suffice to defeat a tax sale, and when, in view of the evidence, it is exceedingly doubtful whether in fact there was any irregularity. In this attempt he cannot succeed.

All the questions presented in this case have been decided by the Supreme Court of Iowa, and decided adversely to the complainant. *Phelps* v. *Meade et al.*, 41 Iowa, 470. That case was an attempt to set aside a tax-deed of lands sold by the treasurer of Cass County at the sale in January, 1864. The averments of the bill were the same as those made in this case, and the case was heard upon the evidence taken upon the case now before us. The rulings of the court were, that, if there was a *bona fide* sale in substance or in fact, the tax-deed is conclusive evidence that it was made at the proper time and conducted in the proper manner. And where a tax-deed, regular in form, recited that the land was sold Jan. 4, and the treasurer testified that the sales of land in the county for delinquent taxes began upon that day, and were continued until the 18th, and that he entered all the sales as of the date of the commencement, it was held, that a sale of land at any time during the continuance of the sale was valid, and that the recording of the sale as of the first day would not impair the title.

We do not find in the unreported case of *Butler* v. *Delano*, to which we have been referred, any thing conflicting with what was decided in *Phelps* v. *Meade*. The facts of the two cases, so far as we can gather them from the opinion of the court in the latter, were widely different. The same may be said of the other unreported case of *Thompson* v. *Ware et al.*

*Decree reversed, and the cause remitted, with instructions to dismiss the bill.*