## WILLIAMS *v.* SUPERVISORS OF ALBANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF NEW YORK.

Argued March 16, 1887.—Decided May 23, 1887.

*Stanley* v. *Supervisors of Albany,* 121 U. S. 535, affirmed to the point that a party who feels himself aggrieved by overvaluation of his property for purposes of taxation, and does not resort to the tribunal created by the state for correction of errors in assessments before levy of the tax, cannot maintain an action at law to recover the excess of taxes paid beyond what should have been levied on a just valuation. His remedy is in equity, to enjoin the collection of the illegal excess upon payment or tender of the amount due upon what is admitted to be a just valuation.

The mode in which property shall be appraised; by whom and when that shall be done; what certificate of their action shall be furnished by the board which does it; and when parties may be heard for the correction of errors, are all matters within legislative discretion; and it is within the power of a state legislature to cure an omission or a defective performance of such of the acts required by law to be performed by local boards in the assessment of taxes as could have been in the first place omitted from the requirements of the statute, or which might have been required to be done at another time than that named in it; provided always, that intervening rights are not impaired.

The statute passed by the legislature of New York April 30, 1883, to legalize and confirm the assessments in Albany for the years 1876, 1877, and

1878 was not in conflict with the acts of Congress respecting the taxation of shares of stock in national banks, and was a valid exercise of the power of the legislature to cure irregularities in assessments.

THIS was an action to recover the amount of certain taxes alleged to have been illegally collected from the plaintiff and others on sundry shares of stock held by them in the National Albany Exchange Bank, in the city of Albany, New York, and paid into the treasury of the county. The stockholders other than the plaintiff assigned to him their respective claims before its commencement. Their demands were originally embraced in an action brought by one Edward N. Stanley against the Board of Supervisors, he being at the time assignee of their claims. In that action judgment was recovered by him. The case being brought to this court, the judgment was reversed, and the cause remanded with leave to the court below, in its discretion, to hear evidence upon the point whether the shares were habitually and intentionally assessed higher in proportion to their actual value than other moneyed capital generally, and, if necessary, to allow an amendment of the pleadings that the point might be properly presented. *Supervisors* v. *Stanley*, 105 U. S. 305. When the case was remanded, on application to the court below, all the counts of the complaint, except the fourth, were amended. Subsequently, however, Stanley discontinued the action as to the claim for the taxes assessed and collected for the years 1876, 1877, and 1878. The plaintiff then took an assignment of the claim for those taxes from Stanley and commenced the present action. He contended that the assessment for those years upon the shares of the stock of the bank was illegal on these grounds:

1st. Because it was not made within the period required by law, which was before the first of September of each year; but after that date.

2d. Because it was not accompanied by the oath of the assessors, that it had been made at the full and true value of the shares, subject only to certain specified deductions allowed by law.

3d. Because it was higher, in proportion to the actual value

of the shares, than the assessment of other moneyed capital in the hands of individual citizens of the state was to its actual value.

The defendant answered these grounds by a general denial, and by setting up an act of the legislature of New York, passed April 30, 1883, legalizing and confirming the assessment.[1]

---

[1] The following is a copy of the provisions of that act found in the Session Laws of 1883, at page 522, omitting the title and enacting clause.

SECTION 1. The assessments contained in the assessment-rolls of the respective wards of the city of Albany, for the years eighteen hundred and seventy-six, eighteen hundred and seventy-seven, and eighteen hundred and seventy-eight, and which are now on file in the office of the receiver of taxes of the city, are hereby in all things legalized and confirmed, subject to the rights of the shareholders or their personal representatives in national or state banks which were located in said city during those years, and the assessments against whom, by reason of their ownership of such shares, were collected by process of law, to claim a deduction from or cancellation of such assessments as provided for in the next section.

§ 2. Within ten days after the passage of this act, the assessors of the city of Albany shall publish a notice subscribed by them, in the official papers of the city, daily, Sundays and holidays excepted, for three weeks, notifying all of such above described shareholders that at the office of such assessors in the city of Albany for three weeks subsequent to the last day of the publication of such notice, Sundays and holidays excepted, the assessors will be in attendance, and will hear any application that may be made to them for the purpose of deducting from the assessments aforesaid any amount which such shareholder or his personal representative would have been entitled to deduct under the law as it existed in the year when the assessment was placed in the roll, had such application then been made.

§ 3. During the time above named, any of such above described shareholders assessed in any of such rolls, or any one representing them, may appear before such assessors and make application to have a reduction or cancellation of such assessment upon any ground which would have been a legal ground at the time when such assessment was placed in the roll, and upon the facts as they existed at the time when such assessment was placed in such roll. The assessors shall have power to administer an oath to the applicant, and, after an examination of him upon the material facts of such application, shall grant to him such deduction from or cancellation of the assessment in question, as he would have been legally entitled to upon the facts as they existed at the time when the assessment to reduce or cancel which the application is made was placed in the roll.

§ 4. After the expiration of the time for hearing applications, the assessors, or a majority of them, shall sign a certificate stating the name of the

The issues were tried by the court without the intervention of a jury, by consent of parties.  The court found the facts as admitted by the pleadings and by stipulation of the parties, from which it appeared, among other things, that no. entry of any assessment of the shares of the stockholders of the bank was made upon the assessment-roll of 1876, 1877, and 1878, until after the 1st day of September of those years, and after the time provided by law for revising and correcting the assessment ; that the oath of the assessors, annexed to the assessment of each year, was defective in its averment respecting the estimated value of the real estate assessed, but was correct in its averment of the estimated value of the personal property ; that there were several banks, state and national, located in the city of Albany, and that the actual value of their shares during those years, with one exception, was above par, varying in that respect from ten to over one hundred per cent, and yet the value of all of them was assessed at par; that the actual value of shares in the National Albany Exchange Bank was from twenty-five to thirty per cent above par; that the asssessment of the shares of some of the other banks was higher and of some of them lower than this figure; and that the assessment at par was not made by the assessors with the intent of discriminating against the holders of national bank

shareholder or his personal representative, who is entitled to a deduction from the amount contained in the assessment-roll, and the amount of such deduction, and the amount of the interest thereon from the fifteenth day of December of the year to which the deduction applies up to the first day of February, eighteen hundred and eighty-four, and the certificate shall be made up in duplicate, and one of them sent to the board of supervisors of the county at its fall session in eighteen hundred and eighty-three, and the other to the county treasurer.

§ 5.  The board of supervisors shall at such session add to the amount to be raised by tax for county purposes the total amount named in such certificate for the principal and interest of such deduction therein named, and such sum shall be levied, assessed, and collected in the same way as other taxes for county purposes and paid to the county treasurer with other county funds.

§ 6.  The county treasurer, upon receipt of the moneys raised by tax, shall pay to the parties named in such certificate sent him by the assessors, the amount therein specified as due such persons.

§ 7.  This act shall take effect immediately.

shares, or in favor of the holders of state bank shares, or other moneyed capital. As a conclusion of law, the court found that the assessments were illegal because not made in conformity with the laws of the state, but that they were legalized and confirmed by the act of its legislature of April 30, 1883, and that they were not in violation of any law of the United States. 22 Blatchford, 302. Judgment was accordingly rendered for the defendant, and the plaintiff brought the case here for review.

*Mr. Matthew Hale* for plaintiff in error.

I. The assessments referred to in the complaint were illegal and void. This was conceded and held by the court below; but, with a view to consider the effect of the confirmatory law, it is deemed necessary here to discuss the grounds of such illegality.

(1) They were illegal by reason of the omission of the assessors to place the names of the shareholders upon the assessment-roll before September first in each year. It will be readily seen from an examination of the statute that the course of the assessors was entirely unwarranted by it. The only way provided by law for making assessments in the city of Albany is by inserting them in the assessment-roll. The fact that the paper was regarded by the assessors as a valid and legal assessment, as above stated, makes no difference. The law required the assessment to be made in a certain way, and it has been repeatedly held that an assessment made otherwise, or after the statutory time, is absolutely void. *Clark* v. *Norton*, 49 N. Y. 243; *Westfall* v. *Preston*, 49 N. Y. 349. See also *Albany City Bank* v. *Maher*, 6 Fed. Rep. 417.

(2) By reason of the failure of the assessors to annex the statutory oath or certificate to the assessment-roll. It is perfectly well settled law in the state of New York that such a departure from the statutory oath makes the assessment absolutely void. *Van Rensselaer* v. *Whitbeck*, 7 N. Y. 517; *Hinckley* v. *Cooper*, 22 Hun, 253; *Brevoort* v. *Brooklyn*, 89 N. Y. 128.

(3) Because the assessments in question were at a greater rate than was imposed upon other moneyed capital in the hands of individual citizens, and were, therefore, a violation of § 5219 of the Revised Statutes.    This resulted, not from accident, or from an erroneous judgment on the part of the assessors as to the actual value, but from the rule which the assessors, in spite of the remonstrances of the plaintiff and others, persisted in.    In other words, it resulted from the illegal system adopted by the assessors, and not simply from an erroneous judgment.    This court held, in the Stanley case, that if "the assessors habitually and intentionally, or by some rule prescribed by themselves, or by some one whom they were bound to obey, assessed the shares of the national banks higher in proportion to their actual value than other moneyed capital generally, then there is ground for recovery."    105 U. S. 318.    It is plain, therefore, again referring to the language of this court in the Stanley case, that the assessors, in defiance of law, habitually and intentionally, and by a "rule prescribed by themselves," assessed the shares of the national bank higher in proportion to their actual value than other moneyed capital generally in the sixth ward.

II.    The court erred in deciding that the act, c. 345 of 1883, was valid and effectual to legalize and confirm said assessments.    This act, so far as it legalizes assessments, should be held to apply only to such assessments as had not been collected.    It is a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively. *United States* v. *Heth*, 3 Cranch, 399 ; *Harvey* v. *Tyler*, 2 Wall. 328 ; *Dash* v. *Van Kleeck*, 7 Johns. 477 [*S. C.* 5 Am. Dec. 291]; *Drake* v. *Gilmore*, 52 N. Y. 389 ; *Quackenbush* v. *Danks*, 1 Denio, 128 ; *S. C.* 3 Denio, 594 ; *Bay* v. *Gage*, 36 Barb. 447 ; *Thames Mf'g Co.* v. *Lathrop*, 7 Conn. 550.    If, however, the act should be considered as attempting to legalize the assessments in question upon which taxes have been collected, it is in violation of the Constitution of the United States, and is void as depriving plaintiff and the other shareholders of their property without due process of law, and also denying to

them the equal protection of the laws. *Tifft* v. *Buffalo*, 82 N. Y. 204; *Richards* v. *Rote*, 68 Penn. St. 248; *Menges* v. *Dentler*, 33 Penn. St. 495 [*S. C.* 75 Am. Dec. 616]; *Schaffer* v. *Eneu*, 54 Penn. St. 304; *Shonk* v. *Brown*, 61 Penn. St. 320; *Bilings* v. *Dotten*, 15 Ill. 218; *Marsh* v. *Chesnut*, 14 Ill. 223; *Conway* v. *Cable*, 37 Ill. 82; *Maine* v. *Doherty*, 60 Maine, 504; *Forster* v. *Forster*, 129 Mass. 559.

III. The defects in the assessments involved in this action were such as could not be legalized, even if the tax had not been collected. *People* v. *Weaver*, 100 U. S. 539, 543, and cases cited there. *Tifft* v. *Buffalo*, above cited.

IV. The notice and hearing provided for by c. 345 were not sufficient to constitute due process of law. *Albany City Bank* v. *Maher*, 9 Fed. Rep. 884. The so-called assessment made by the assessors was beyond their jurisdiction, being made after the time that the law permitted them to make assessments. *Westfall* v. *Preston*, 49 N. Y. 349; *Clark* v. *Norton*, 49 N. Y. 243. It lacked all the elements of a valid tax. There was no apportionment, but an arbitrary assessment of a fixed sum without reference to actual value. It could not, therefore, be legalized. *Denny* v. *Mattoon*, 2 Allen, 361 [*S. C.* 79 Am. Dec. 784]; *Mayor, &c.,* v. *Horn*, 26 Maryland, 194; *Butler* v. *Saginaw*, 26 Mich. 22; *Tifft* v. *Buffalo*, 82 N. Y. 204, 210, 211.

The adjudications in regard to property taken under the power of eminent domain, do not sustain the court below in its holding that the hearing provided for by c. 345 of 1883, was sufficient. (*a*) The Federal courts have generally held that, in such cases, compensation must be paid before the property can be taken. See *Bonaparte* v. *Camden & Amboy Railroad*, 1 Bald. 205; *Avery* v. *Fox*, 1 Abb. U. S. 246; *Pryzbylowicz* v. *Missouri River Railroad*, 17 Fed. Rep. 492; *Burns* v. *Multnomah Railroad*, 15 Fed Rep. 177; *People* v. *Hayden*, 6 Hill, 359, 361; *Sage* v. *Brooklyn*, 89 N. Y. 189; *Rensselaer & Saratoga Railroad* v. *Davis*, 43 N. Y. 137; *In re New York Central Railroad*, 66 N. Y. 407; *In re Eureka Warehouse Co.*, 96 N. Y. 42. (*b*) Laws authorizing the exercise of eminent domain, without providing for compensation, have been repeatedly held to be unconstitutional and void.

*Thatcher* v. *Dartmouth Bridge Co.*, 18 Pick. 501; *In re Mt. Washington Road*, 35 N. H. 134; *Boston & Lowell Railroad* v. *Salem & Lowell Railroad*, 2 Gray, 1; *Watson* v. *Trustees*, 21 Ohio St. 667; *Beckwith* v. *Beckwith*, 22 Ohio St. 180; *Nichols* v. *Somerset, &c., Railroad*, 43 Maine, 356; *Prichard* v. *Atkinson*, 3 N. H. 335.

V. The attempted legalization by c. 345 of 1883 was void, because in violation of the restriction in § 5219 of the Revised Statutes, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the state. *People* v. *Assessors*, 2 Hun, 583; *Williams* v. *Weaver*, 75 N. Y. 30; *Stanley* v. *Supervisors*, 15 Fed. Rep. 483.

VI. While we insist that all the assessments were void, and were not cured by the law of 1883, there are some, to which there are still other objections than those stated above, and as to which it cannot well be claimed that there is any defence. Assessments to the "estate" of a deceased person are wholly void, as has been held by the Court of Appeals of this state. *Trowbridge* v. *Horan*, 78 N. Y. 439. Several of the shareholders assessed in the years 1876, 1877, and 1878, died before the passage of the act of 1883. As to these deceased persons, the provision for notice in §§ 2 and 3 of the laws of 1883, are entirely inadequate. None but the persons themselves, if living, could swear as to their financial condition at the time of the respective assessments. No notice to their personal representatives is provided.

VII. There is no doubt that this action can be maintained, if the assessment was illegal, from whatever cause. *Newman* v. *Supervisors*, 45 N. Y. 676; *National Bank of Chemung* v. *Elmira*, 53 N. Y. 49; *Horn* v. *Town of New Lots*, 83 N. Y. 100.

VIII. The facts set up in the third paragraph of the answer constitute no defence. The plaintiff could not so ratify and acknowledge the validity of an unconstitutional law as to make it constitutional and valid. Nor is there any basis for claiming an equitable estoppel if such there could be. The principles of estoppel and waiver have no application to

the facts in this case. All the familiar elements constituting estoppel *in pais* are wanting. (1) There was no admission by plaintiff inconsistent with this claim. His claim was that *all* the assessments were void, and that the money illegally collected should be refunded. There was no inconsistency therefore in his taking a *part.* (2) There was no action on the part of the defendant, induced by any act or admission of plaintiff which will injure it. If our contention is correct, the defendant was legally liable to pay us the whole amount of our claim; it certainly suffered no injury by paying a part, for which it conceded its liability. Nor is there any ground for claiming a waiver. A plaintiff, by the receipt of the amount of a judgment in his favor, is not precluded from appealing on the ground that the recovery should have been greater. *United States* v. *Dashiel,* 3 Wall. 688; *Embry* v. *Palmer,* 107 U. S. 3; *Clowes* v. *Dickenson,* 8 Cow. 328; *Higbie* v. *Westlake,* 14 N. Y. 281; *Benkard* v. *Babcock,* 2 Robertson (N. Y.) 175; *Barker* v. *White,* 58 N. Y. 204.

*Mr. Wheeler H. Peckham* and *Mr. Simon W. Rosendale* for defendant in error.

Mr. Justice Field, after stating the case as above reported, delivered the opinion of the court.

It may be conceded that the assessment of the shares of the National Albany Exchange Bank was in some instances higher in proportion to their actual value than the assessment of some other moneyed capital in the hands of individual citizens was to its actual value; but, as seen from the findings, such discrimination was not designed by the assessors. It is so stipulated by the parties. Whatever discrimination in such instances may have existed arose from the difficulty of devising any other mode than the one adopted, which would work out greater equality and uniformity in the valuation of different kinds of moneyed capital. There was no proof as to the assessment of any moneyed capital, except shares of other banks, state or national. The value of shares in some of these banks was higher, in some lower, than that of the

shares of the National Albany Exchange Bank. The method adopted of assessing all shares at par was generally satisfactory to the owners of the national bank stock in the city of Albany, with the exception of a few stockholders in the National Albany Exchange Bank. Considering the nature of the property, and the frequent fluctuations in value to which it is subject, the method applied to all banks, state and national, came, as we said in the recent case of Stanley against the same defendants, as nearly as practicable to securing between them equality and uniformity of taxation. All the banks, state and national, being thus placed, as respects taxation, upon the same footing, the method could not be considered as adopted in hostility to any of them. If it sometimes led to undervaluation of the shares of national banks, the holders could not complain. If it sometimes led to overvaluation of the shares, the aggrieved party could obtain relief by pursuing the course pointed out by the statute for its correction, unless, as asserted, this course was not, in the years mentioned, available to the plaintiff and the stockholders, whose interests were assigned to him, because their names were not placed on the assessment-roll until the time provided by law for revising and correcting the assessment had passed. If that course was thus cut off, they could have resorted to a court of equity to enjoin the collection of the illegal excess upon payment or tender of the amount due upon what they admitted to be a just valuation. We have considered this subject so fully in the recent case of Stanley against these same defendants, 121 U. S. 535, to which we refer, that it is unnecessary to pursue it further.

The irregularities in the assessment for the years 1876, 1877, and 1878, in that no entry of any assessment of the shares of the plaintiff and of the stockholders whose claims were assigned to him was made on the assessment-roll of those years until after the first of September, and after the time for revising and correcting the assessment had passed, and in the defect of the oath annexed in its averment as to the estimate of the value of real estate, were, in our judgment, cured by the validating act of April 30, 1883. The power of taxa-

tion vested in the legislature is, with some exceptions, limited only by constitutional provisions designed to secure equality and uniformity in the assessment. The mode in which the property shall be appraised, by whom its appraisement shall be made, the time within which it shall be done, what certificate of their action shall be furnished, and when parties shall be heard for the correction of errors, are matters resting in its discretion. Where directions upon the subject might originally have been dispensed with, or executed at another time, irregularities arising from neglect to follow them may be remedied by the legislature, unless its action in this respect is restrained by constitutional provisions prohibiting retrospective legislation. It is only necessary, therefore, in any case to consider whether the assessment could have been ordered originally without requiring the proceedings, the omission or defective performance of which is complained of, or without requiring them within the time designated. If they were not essential to any valid assessment, and therefore might have been omitted or performed at another time, their omission or defective performance may be cured by the same authority which directed them, provided, always, that intervening rights are not impaired. Such is the conclusion of numerous adjudications by the state courts upon the effect of curative acts, and of this court in *Mattingly* v. *District of Columbia*, 97 U. S. 687, 690. *Hart* v. *Henderson*, 17 Mich. 218; *Musselman* v. *Logansport*, 29 Ind. 533; *Grim* v. *Weissenberg School District*, 57 Penn. St. 433. The completion of the assessment-roll in the case at bar before the first of September in the years mentioned, and the form of the oath annexed, were not so vital to the assessment itself as necessarily to render the defect arising from a later return or a deficient oath incurable. The completion of the assessment-roll by that date was deemed essential by the court below, because the law required the assessors forthwith to cause notices to be published in three of the public newspapers of the city for twenty days, specifying a day at their expiration when they would meet and remain in session five days for the purpose of reviewing their assessments on the application of any one aggrieved. The re-

quirement was designed to afford tax-payers whose names were on the roll an opportunity for the examination and correction of the assessment of their property. The assessment could not stand if they were deprived of that opportunity. But it is not perceived why it might not be legalized and confirmed by the legislature giving to them such opportunity after the time originally designated had expired. No just right of the tax-payer would thereby be defeated.

The assessment of the shares of the bank for the years 1876, 1877, and 1878 was held invalid for the reason stated, under the laws of the state, although from what we have said it would not be open to objection as being in conflict with the act of Congress. It is only in view of its invalidity for want of conformity to the laws of the state that the validating act becomes of importance. That act declares that the assessments contained in the assessment-rolls of the wards of the city for the above years are "in all things legalized and confirmed, subject to the rights of the shareholders or their personal representatives, in national or state banks which were located in said city, during those years, and the assessments against whom by reason of their ownership of such shares were collected by process of law, to claim a deduction from or cancellation of such assessments." It required the assessors, within ten days after the passage of the act, to publish in the official papers of the city daily for three weeks, Sundays and holidays excepted, a notice to the stockholders that the assessors would be in attendance at their office in Albany, for three weeks subsequent to the last day of publication of the notice, and hear applications for the deduction from the assessments of any amount which such stockholders or their personal representatives would have been entitled to deduct under the law as it existed in the year when the assessment was placed on the roll, had such application then been made. And the act provided that such shareholders, or any one representing them, might appear before the assessors and apply for a deduction or cancellation of the assessment upon any ground which would have been a legal one when the assessment was placed on the roll, and the assessors were empow-

ered to grant such reduction or cancellation as the· shareholders would have been legally entitled to at that time. The act, also, made provision for the collection and payment to the parties of the amount found to be due them with interest.

It is difficult to see on what plausible ground the validity of this act can be questioned, unless the power of the legislature to cure by legislative act any irregularities of the assessment be denied. Every right of the shareholder who had paid taxes on the assessment, and it does not appear that there were any others, was secured. He could present any claim he might have for a reduction or cancellation of the assessment, and be heard respecting it. He occupied the same position he would have held, if the assessment of his shares had been placed on the assessment-roll within the time required — that is, before the first of September — and the oath annexed had been without any fault or omission in its averments. The plaintiff and the other shareholders were bound, as owners of property, to bear their just proportion of the public burdens, and if, in ascertaining what that proportion should be, some steps in the proceeding were omitted which invalidated the assessment, it would seem but just that the defect should be cured, if practicable, and the shareholders not be allowed to escape taxation, and thus entail the burden they should bear upon other taxpayers of the community.

After the validating act was passed, the plaintiff applied to the assessors for the cancellation of the assessment for the years 1876, 1877, and 1878, or a reduction from the amount assessed. The assessors refused to cancel the assessments, but they allowed a reduction from them to the amount of $2071.66, which was paid to him.

It follows from the views expressed that

*The judgment of the Circuit Court must be affirmed; and it is so ordered.*