[No. 1915.   Rehearing denied November 8, 1917.]

## MAXWELL v. PAGE.

### SYLLABUS BY THE COURT.

1.   Constitutional guaranty against the taking of property without due process of law has to do, in taxation proceedings, with the essentials of taxation only. All other matters may be varied according to the legislative will. The Legislature may provide by law what shall be essential, and what not essential, in taxation proceedings, subject only to the fundamental principle that the taxpayer must have notice and opportunity to be heard as to the amount of the charge laid upon his property. Notice of every step in the tax proceedings is not necessary. The owner, if he has notice and opportunity to be heard either before or after the tax lien is fixed upon his property, has due process of law.                                                    P. 360

2.   The curative provisions of section 25, c. 22, Laws 1899, providing that no sale or tax title had in accordance with the act should be invalidated except upon the ground that the taxes were paid before sale, or that the property was not subject to taxation, are to be given effect according to their terms, and are held to control other provisions of the act which are merely directory. A tax sale held prior to the time appointed by the act is nevertheless valid by rea-

son of said curative provisions, and cannot be avoided by reason of being premature, the time of sale appointed by the statute being held to be directory and not mandatory.                                                        P. 364

3. This statute, as thus construed, is held not to be violative of the constitutional guaranty against depriving a person of his property without due process of law.        P. 365

4. Section 29, c. 22, Laws 1899, construed, and held not to require a judgment of the district court in all cases where property is assessed to unknown owners, but to require only be considered here.                                      P. 370

5. A question not presented to the lower court will not be considered here.                                          P. 371

Appeal from District Court, McKinley County; Reynolds, Judge.

Suit to quiet title by Cornelia J. Maxwell against Gregory Page and wife. Decree for defendants, and plaintiff appeals. Affirmed.

H. B. Jamison, of Albuquerque, for appellant. McFie, Edwards & McFie, of Santa Fe, for appellees.

#### OPINION OF THE COURT.

PARKER, J. This is a suit to quiet title to certain lots situate in the town of Gallup. The suit was brought by W. A. Maxwell, the appellant, against Gregory Page and his wife, and resulted in a decree in favor of the appellees. From that decree the appellant has appealed.

The claim of title to the premises in controversy by the appellant is based upon a conveyance from the probate judge of McKinley county, trustee of the Gallup townsite, dated October 24, 1891. The appellees claim title to the lands under tax certificates and a deed subsequently executed by the county of McKinley. The record discloses that the lands in contro-

versy were assessed to unknown owners for the tax
years of 1900 to 1903, inclusive. In 1903 the land was
advertised to be sold on the fourth Monday in October,
1903, on account of certain delinquent taxes charge-
able against the land. On October 26, 1903, the prop-
erty was sold to the county of McKinley, and, al-
though the record is not emphatic on this point, it
would appear that the sale to the county was for the
taxes, interest, penalties, and costs chargeable against
the lands for the year 1903. On the same day the
duplicate certificates of sale, issued by the county,
were assigned to the appellees upon the payment to
the county of $20.13. On February 12, 1908, the col-
lector of the county of McKinley executed in favor of
appellees its deed for the premises. All of the pro-
ceedings herein were taken under the tax law of 1899.
That law (chapter 22, Laws 1899), together with cer-
tain sections appearing in the Compiled Laws of 1897
(title 41) constituted a comprehensive system for the
assessment, levy, and collection of taxes. In brief, it
required all property owners, or persons in control of
property, to list the same for taxation purposes. In
the event the owners failed to list their property the
assessor returned the property for taxation. The as-
sessor was authorized to increase the assessed value of
property listed by the owners thereof when, in his
opinion, the valuation should be increased. In cases
where the owner of property was absent or unknown
the assessor returned the land for taxation purposes.
Assessments in the name of unknown owers were made
by the assessor wherever the owner of property was
unknown. Whenever the assessor increased the assess-
ed valuation of property over the amount returned by
the owner, the law provided for notice of such action
to the owner .County boards of equalization were
created whose business it was to equalize all assess-
ments. Notice to owners of any equalization of val-
ues affecting their property was also required. The
time and place of all meetings of this board were fixed
by public law. Property owners were given full op-
portunity to appear before said board and register

such complaints with reference to their assessments as they chose to make. Appeals from that board to the state board of equalization were provided by law. The law further provided that one-half of the taxes for the last preceding year became delinquent on January 1st following, and the other half on July 1st following. If the taxes were not paid within 90 days thereafter the collector was required to commence publication of the delinquent tax list. This list was published four times, once a week for four consecutive weeks. Where the delinquency amounted to more than $25 the law required a judgment of the district court, with order of sale to be obtained from the court. Where the delinquency was less than $25 the sale of the property was authorized without resort to proceedings in the district court. Sales of this latter class were required to be held on the first Monday in May for taxes becoming delinquent on January 2d preceding, and the first Monday in November for taxes becoming delinquent on the second day of July, preceding. The law permitted such sales to be continued from day to day, not to exceed 60 days. Where the property offered for sale was not sold to private persons, the same was struck off to the county for the taxes, interest, penalties, and costs, and the law permitted the county, in such cases, to sell duplicate certificates of sale to individuals. The certificates of sale, by express statutory enactment, vested in the purchaser, and the county was declared to be a purchaser under the act, a complete legal title to the property, subject only to the right of redemption, within three years after sale. Section 25 of the act provided the following:

"No bill of review or other action attacking the title to any property sold at tax sale in accordance with this act shall be entertained by any court, nor shall such sale or title be invalidated by any proceedings except upon the ground that the taxes * * * had been paid, before the sale, or that the property was not subject to taxation."

There were other curative or healing provisions in the act not necessary to mention in this connection.

The appellant assails the validity of the appellees'
tax title on the grounds that neither the notice of sale
nor the sale itself pretended to comply with the law,
and therefore there is an entire lack of jurisdiction in
the tax proceedings; that the Legislature was without
power to pass a curative or healing statute so as to
cut off jurisdictional attacks upon tax titles; that the
taxes in the case at bar amounted to more than $25,
and no order of sale by the district court was obtain-
ed; hence the sale is a nullity; and that the sale was
tainted with legal fraud because the property was
sold to the appellees for less than 50 per cent. of the
taxes, interest, penalties, and costs.

[1] In order to get a clearer view of the ques-
tions involved, it may be well to here restate some of
the general principles governing such matters. The
guaranty contained in the Fourteenth Amendment to
the federal Constitution against the taking of property
without due process of law, and the guaranty con-
tained in like provisions of our Constitution, is a guar-
anty that the essentials of taxation only shall be ob-
served in the taking of the property. All other mat-
ters depend upon the lawmaking power of the state,
and may be varied or changed as the legislative will
of the state shall see fit to ordain. Cooley on Taxation
(3d Ed.) pp. 56, 57; Del Castillo v. McConnico, 168
U. S. 674, 18 Sup. Ct. 229, 42 L. Ed. 622; Lombard v.
West Chicago Park Commissioners, 181 U. S. 33, 21
Sup. Ct. 507, 45 L. Ed. 731. In the Castillo Case,
supra, the Supreme Court of Louisiana had decided
that under the Louisiana statute the placing of the
name of R. Castillo instead of Rafael Maria del Cas-
tillo on the assessment roll was such an irregularity as
could not be taken advantage of by the taxpayer, the
statute of that state making the deed conclusive evi-
dence of the sufficiency of the assessment of the prop-
erty sold under it. The notice of sale contained the
true name of the taxpayer, but added thereto ''or her
estate or heir.'' These irregularities the state court
disregarded. The Supreme Court of the United
States pointed out that the law of Louisiana pro-

vided for the placing of the name of the owner on the
assessment roll, and also that it fixed the time when
the assessment rolls should be exposed for examination
and correction, and furnished ample opportunity, not
only for revision as to valuation, but also for judicial
correction of any legal error which might be asserted
to exist in the assessment. It points out that the stat-
ute of Louisiana might have dispensed entirely with
the requirement that the name of the owner should
appear in the published notice. The court cites, on
this point, Williams v. Supervisor of Albany, 122 U. S.
154, 7 Sup. Ct. 1244, 30 L. Ed. 1088, and quotes from
the opinion of Mr. Justice Field as follows:

"The mode in which the property shall be appraised, by
whom its appraisement shall be made, the time within which
it shall be done, what certificate of their action shall be fur-
nished, and when parties shall be heard for the correction
of errors, are matters resting in its discretion. Where di-
rections upon the subject might originally have been dis-
pensed with, or executed at another time, irregularities aris-
ing from neglect to follow them may be remedied by the
Legislature, unless its action in this respect is restrained
by constitutional provisions prohibiting retrospective legisla-
tion. It is only necessary, therefore, in any case to con-
sider whether the assessment could have been ordered orig-
inally without requiring the proceedings, the omission or
defective performance of which is complained of or without
requiring them within the time designated. If they were not
essential to any valid assessment and therefore might have
been omitted or performed at another time their omission
or defective performance may be cured by the same
authority which directed them, provided, always, that inter-
vening rights are not impaired."

The courts in the Castillo Case then proceeds as
follows:

"The vice which underlies the entire argument of the
plaintiff in error arises from a failure to distinguish between
the essentials of due process of law under the Fourteenth
Amendment, and matters which may or may not be essen-
tial under the terms of a state assessing or taxing law. The
two are neither correlative or coterminous. The first, due
process of law, must be found in the state statute, and can-
not be departed from without violating the Constitution of
the United States. The other depends on the lawmaking
power of the state, and, as it is solely the result of such
authority, may vary or change as the legislative will of the
state sees fit to ordain. It follows that to determine the ex-

istence of the one, due process of law is the final province of this court, whilst the ascertainment of the other, that is, what is merely essential under the state statute, is a state question within the final jurisdiction of courts of last resort of the several states. When, then, a state court decides that a particular formality was or was not essential under the state statute, such decision presents no federal question, providing always the statute as thus construed does not violate the Constitution of the United States, by depriving of property without due process of law. This paramount requirement being fulfilled, as to other matters the state interpretation of its own law is controlling and decisive. This distinction is pointed out by the decisions of this court. Pittsburg, Cincinnati, etc., Railway v. Backus, 154 U. S. 421 [14 Sup. Ct. 1114, 38 L. Ed. 1031]; Kentucky Railroad Tax Cases, 115 U. S. 321 [6 Sup. Ct. 57, 29 L. Ed. 414]; Davidson v. New Orleans, 96 U. S. 97 [24 L. Ed. 616]."

The Legislature may prescribe, by law, what shall be essential and what unessential in taxation proceedings, subject only to the fundamental principle that a person whose property is to be subjected to taxation must have notice and an opportunity to be heard as to the amount of the charge upon his property, or, in other words, that due process of law must be provided for. Smith v. Cleveland, 17 Wis. 556. The statute of Wisconsin provided that a tax deed should be conclusive evidence that the proceedings had been regular from the valuation of the land up to the execution of the deed and to an existence of all conditions precedent in any way affecting the validity of such deed, except that it should be prima facie evidence only of the liability of the land to taxation, the nonpayment of the tax, and the nonredemption of the land after sale. The court said:

"But aside from the sanctions of authority, the question seems very plain to us on principle. The only constitutional restrain is that requiring the rule of taxation to be uniform. In all other respects the power of the Legislature is supreme. The machinery of taxation—the mode of levying, assessing and collecting—is subject entirely to its discretion. The liability to taxation and nonpayment of the taxes being admitted, the Legislature may, as to all other things, declare what shall or shall not be essential to the validity of the proceedings. The same power which imposes a duty may dispense with its performance. It may say that the proceeding shall be void for nonperformance, or that it shall nevertheless be valid. The difference is between mandatory and directory statutes. * * * The Legislature might

have fixed the time and provided for a sale without notice or advertisement. They may, surely, by proper legislation in advance, guard against errors and cure mistakes when notice is required."

See, also, 1 Cooley on Taxation (3d Ed.) 521 et seq., where many cases are collected in the notes.

Notice of every step in the tax proceedings is not necessary; the owner is not deprived of property without due process of law if he has an opportunity to question the validity or the amount of such tax or assessment, either before that amount is finally determined or in subsequent proceedings for its collection. 1 Cooley on Taxation (3d Ed.) 60; Palmer v. McMahon, 133 U. S. 660, 10 Sup. Ct. 324, 33 L. Ed 772. In the Palmer-McMahon Case the statute of New York provided that if a taxpayer refused or neglected to pay a tax imposed upon him for personal property, he might be fined in a sum sufficient in amount to pay the tax, costs, and expenses, the proceeds whereof were to be applied to the payment thereof. The statute made no provision for notice to the taxpayer of the application to the court for the imposition of the fine, but gave opportunity for objection before the tax commissioners as to the amount to be charged against the property, and, if dissatisfied with the final action of the commissioners, he could have their action reviewed on certiorari. It was objected to the constitutionality of the law that the taxpayer under the staute had no notice or opportunity to be heard at the time of the application to the court for the imposition of the fine. The court said:

"The imposition of taxes is in its nature administrative and not judicial, but assesors exercise quasi judicial powers in arriving at the value, and opportunity to be heard should be and is given under all just systems of taxation according to value. It is enough, however, if the law provides for a board of revision authorized to hear complaints respecting the justice of the assessment, and prescribes the time during which and the place where such complaints may be made Hagar v. Reclamation District 111 U. S. 701, 710 [4 Sup. Ct. 663, 28 L. Ed. 569]."

In McMillen v. Anderson, 95 U. S. 37, 24 L. Ed. 335, it was held that the statute of Louisiana, which pro-

vided for no notice or opportunity to be heard when a tax is first assessed, is nevertheless constitutional; there being provision made for the testing of the validity of the tax by an injunction suit in a court of justice. In Merchant's Bank v. Pennsylvania, 167 U. S. 461, 17 Sup. Ct. 829, 42 L. Ed. 236, the court considered the Pennsylvania statute, which provided that banks should make their report to the auditor general, and specifically directed him to hear any stockholder who might desire to be heard at the time specified. The court held the statute and the obligation thereby imposed upon the auditor general to hear complaints as to the valuation of shares of stock to be due process of law, and quotes from Hagar v. Reclamation District, 111 U. S. 701, 710, 4 Sup. Ct. 663, 668 (28 L. Ed. 569), as follows:

"The law, in prescribing the time when such complaints will be heard, gives all the notice required, and the proceeding by which the valuation is determined, though it may be followed, if the tax be not paid, by a sale of the delinquent's property, is due process of law."

[2] Making application of some of the foregoing principles, it will appear that our first duty in this case is to determine the meaning of the tax statute under consideration. As has been heretofore pointed out, it is first made the duty of the taxpayer to list and value his property and return the same for taxation. If the assessor deems the valuation too low, he has the power to raise the same, and is required to notify the taxpayer. If the taxpayer is aggrieved by the action of the assessor, there is a day appointed by law for him to appear before the county board of equalization and there seek such remedy as he deems himself entitled to. If still aggrieved by the county board of equalization, he has the right to appeal to the territorial board of equalization, the action whereof is final. He thus has two opportunities to litigate before a competent tribunal the question of the valuation of his property and its liability to taxation.

The statute provides for a sale of all property in the county upon which taxes have become delinquent

at certain specified times each year after certain specified notices by publication thereof. The Legislature, however, provided, as has been heretofore pointed out, that no title acquired at any such tax sale should be invalidated in any proceeding, except upon the ground that the taxes had been paid before the sale, or that the property was not subject to taxation. This curative feature of the statute stands out conclusively against any technical objection to a tax title. This provision, if it is to be given the force and effect which its language requires, prohibits the interposition of any objection to a tax title, except such as are named in the provision itself. All other directions and provisions in regard to the procedure to be employed by the taxing officers must yield to this provision, or it must be held to be of practically no force and effect. In view of the whole act we conclude that the Legislature intended that the curative feature of the statute should prevail over any irregularity which might occur in the tax proceedings. It is true that the Legislature directed that tax sales should take place at a certain time after a certain notice. It is likewise true that the curative provision in the statute must be held to have the force and effect of rendering the directions in regard to the procedure merely directory and not mandatory, and to amount, in effect, to saying to taxing officers that they shall proceed as provided in the act, but as saying to the taxpayer that if they fail to so proceed, the fact shall not be a defense to him, and shall not invalidate the tax title.

[**3**] The question then is, Is the statute, as thus construed, violative of the constutional guaranty against the taking of property without due process of law? As we have heretofore pointed out, the constitutional guaranty is applicable only to the substance and essentials of things, not to formalities and procedure. The essentials of taxation are the existence of the subject-matter which is to be subjected to taxation and its liability to the imposition of the tax, the assessing of the property for taxation, and the levying of the tax thereon. If, upon all of these subjects, the

taxpayer has had notice and opportunity to be heard, he has had due process of law. It is not an essential in taxation proceedings that the state should proceed to enforce the collection of the tax in any particular way, or at any particular time. Therefore it is within the legislative discretion to give directions to the taxing officers to proceed to a sale in a certain way and at a certain time each year for the purpose of collecting the taxes due from the taxpayers. But the Legislature might well have provided that another and entirely different procedure should be resorted to for the purpose of the collection of the tax. These provisions are enacted in the interest of the state for the purpose of enabling it to promptly collect its public revenue. The manner of collecting the tax after it has, with due notice to the taxpayer, been fixed upon his property is a matter in which the taxpayer has no legal interest. Thus in De Treville v. Smalls, 98 U. S. 517, 25 L. Ed. 174, Congress had laid a tax upon all of the real property in the states which were in insurrection during the Civil War in proportion to the amount justly due from them for the support of the government. The act of Congress provided that the amount of the tax to each individual owner should be apportioned by tax commissioners in such proportion as the value of the particular piece of property bore to the whole property of the state as rendered for taxation in the next preceding year, as shown by the state tax rolls. The act further provided that the certificate of sale of the commissioners should not be affected as evidence of the regularity and validity of the sale, except by establishing that the property was not subject to the taxes, or that the taxes had been paid previous to sale, or that the property had been redeemed according to the provisions of the act. The court said:

"Besides, all possible attack upon the prima facies of the certificate was limited by the express provisions of the act, which enacted, as before stated, that it should only be affected as evidence of the regularity and validity of sale, by establishing the fact that the property was not subject to taxes, or that the taxes had been paid previous to sale, or that the property had been redeemed. This left to the owner of lands subject to the tax every substantial right.

It was his duty to pay the tax when it was due. His land was charged with it by the act of Congress, not by the commissioners; and the proceeding ending in a sale was simply a mode of compelling the discharge of his duty. All his substantial rights were assured to him by the permission to show that he owed no tax, that his land was not taxable; that he had paid what was due; or that he had redeemed his land after sale. He was thus permitted to assert everything of substance—everything except mere irregularities."

This same doctrine was affirmed in Keeley v. Sanders, 99 U. S. 441, 25 L. Ed. 327. Our statute, now under consideration, was before the territorial court in Straus v. Foxworth, 16 N. M. 442, 117 Pac. 831, and before the Supreme Court of the United States on appeal in 231 U. S. 162, 34 Sup. Ct. 42, 58 L. Ed. 168. In that case the original owner brought suit to remove the cloud on his title created by the tax deed. The defendant demurred to the complaint upon the ground that under the provisions of the statute such title could be invalidated only upon the grounds stated in the curative section of the law. The demurrer was sustained and the plaintiff, electing to stand on the complaint, a judgment of dismissal was entered from which the appeal was taken. The territorial court affirmed the judgment of the district court, holding that the curative clause of section 25 of the act excluded all inquiry into questions of procedure in the tax proceedings, and, as thus construed, the act was not unconstitutional as providing for the taking of property without due process of law. The court pointed out that under the decisions of the Supreme Court of the United States, and others, a taxpayer is not entitled, as a matter of right, to have his property sold to satisfy the tax, and that it might be forfeited without a sale, citing King v. Mullins, 171 U. S. 404, 18 Sup. Ct. 925, 43 L. Ed. 214, and other cases. The cases relied upon by the territorial court upon this particular point were all from West Virginia, where the Constitution of the state provided for forfeiture, without notice to the taxpayer, of all lands for the nonlisting or nonpayment of taxes thereon for five years. There was provision, however, for a proceeding in a court to obtain an order for the sale of such property as forfeited

property, in which proceeding the owner was to receive notice and was entitled to be heard. That is the only difference between the laws of West Virginia and those of this jurisdiction in this particular. Our laws give notice to the taxpayer and opportunity to be heard before the tax lien is fastened upon the property, while in West Virginia the notice comes after the forfeiture of the property.

We see no reason to depart from the holding in the Strause-Foxworth case, as we consider the reasoning of that case sound upon the considerations mentioned herein.

Nevin v. Bailey, 62 Miss. 433, holds that an act substantially in the terms of our statute is constitutional.

Allen v. Armstrong, 16 Iowa, 508, is an instructive case upon this subject. In Iowa the statute provided that the tax deed should be conclusive evidence that the property had been listed and assessed as required by law; that the taxes were levied according to law; that the property was advertised as required by law; that it was sold as stated in the deed; that the grantee was the purchaser; that the sale was conducted as required by law; and that all the prerequisites of the law had been complied with. In order to defeat the tax title in the above case the defendant offered to show that the advertisement of sale was not sufficient, and that the lands were described as being delinquent for the year 1839 instead of 1859. He also offered to show that the assessor assessed the property before he was qualified, and that he did not reassess it after he was qualified. In discussing the statute the court held the tax title valid, and said:

"If any given step or matter in the exercise of the power to tax (as for example the fact of a levy by the proper authority), is so indispensable, that without its performance no tax can be raised, then that step or matter, whatever it may be, cannot be dispensed with, and with respect to that the owner cannot be concluded from showing the truth by a mere legislative declaration to that effect."

The court, in applying the rule laid down by it, as stated above, to the facts in that case, said:

"The Legislature might provide for the sale of property for delinquent taxes, on a given day, without requiring any notice. And hence they may provide, as they have done in cases of ordinary sales on execution by sheriffs, * * * that the omission to give notice, while it subjects the officer to damages, shall nevertheless not affect the validity of the sale. As it is competent for the Legislature to declare that a notice in all respects regular is not essential, so it is competent for it to say that a deed shall, in the purchaser's favor, be conclusive evidence of due notice."

See, also, McCready v. Sexton, 29 Iowa, 356, 4 Am. Rep. 214, where a fine and extensive discussion of the law on this subject is to be found. In Clark v. Thompson, 37 Iowa, 536, this same statute was before the court, and it was there held that the tax deed was conclusive evidence as to the time of sale which, it is there said, is not jurisdictional matter. In Shawler v. Johnson, 52 Iowa, 472, 3 N. W. 604, the lands were omitted from the published notice and were sold upon a day not provided by the statute. It was held that neither of these was jurisdictional, and that the sale was nevertheless valid under the provisions of the statute. The Iowa statute, above referred to, was before the Supreme Court of the United States in Callanan v. Hurley, 93 U. S. 387, 23 L. Ed. 931, and was, by that court, upheld.

The courts differ upon the question as to what is an indispensable essential in taxation and what is not indispensable. If they agree upon this question, they all agree upon the question of the constitutionality of the statute. We hold that it is not indispensable under our statute to hold tax sales upon the very day appointed by statute, and that therefore the Legislature has power to provide, as it has provided, that an irregularity as to the time of sale shall not invalidate the title of the purchaser.

Counsel for appellant cites many cases holding that a premature sale, such as was had in this case, is necessarily invalid and void. These conclusions are reached upon a consideration of the statute of the particular state in which they were rendered. We construe our statutes as providing that a sale had prior or subsequent to the time directed by the stat-

ute shall be a valid sale, because otherwise the curative clause of section 25 can have no operative effect.

We are not unmindful in this connection of the quite general holding of the courts that the provisions of the taxing statute in regard to the time and manner of the sales are to be strictly construed. Thus it is said by Judge Cooley:

"The sale must be made at the very time and place provided by law for that purpose. In this regard the utmost strictness is required, since otherwise the whole purpose of the notice, both as regards information to the public and protection to the owner of the land, will be defeated. * * * So a sale either before or after the time which has been made for the purpose is wholly without warrants of law, and cannot be sustained." 2 Cooley on Taxation (3d Ed.) 938, 939.

Many cases are collected in marginal notes. This statement embodies the general trend of opinion throughout the country. The fact remains, however, that under a statute like ours, which provides, in effect, that the tax title shall not be invalidated on account of any error in this regard, or in any other regard except the two mentioned in the statute, we are compelled to hold that the provisions in regard to the time, place, and manner of sale are directory merely to the taxing officers, and that the sale is valid, notwithstanding any irregularity therein.

[4] Counsel for appellant urge that the tax sale is void for the reason that it was for more than $25, alleging that it was for $28.71. They found this objection upon the provisions of section 15 of the act which provides that, in case the taxes amount to more than $25 a judgment of the district court must be obtained before a sale can be made. Assuming, without deciding, that such a proposition might be put forward for the purpose of invalidating a tax sale, the same is not available in this case. It appears from the record that the property sold consisted of 11 city lots in the town of Gallup, and it also appears that 11 tax sale certificates were issued. It is fairly inferable from the record, therefore, that each lot was sold separately, and that a a tax sale certificate was issued for each of the same. This would obviate, completely,

the objection made in this regard.   The tax deed contains a recital that it was issued upon the surrender of 11 tax certificates.

Counsel for appellant put forward the proposition that in all cases where property is assessed to unknown owners there must be a judgment of the district court before sale of the property can be had. They rely upon section 29 of the act, which is as follows:

"When any property is listed upon the assessment roll as the property of unknown owners, the same proceedings shall be had as provided for in this act against the property of known owners and the judgment rendered shall be against the property as listed."

We can see no merit in the proposition.   The section makes the broad, general provision that the procedure in case of property assessed to unknown owners shall be the same as it is when it is assessed against known owners, and simply provides that any judgment rendered shall be against the property as listed. The section means that when judgment is required, that is, when the tax amounts to more than $25, the judgment shall run against the property instead of against some person, as it would do in case of a known owner.   We can see nothing in the section requiring a judgment in all cases regardless of the amount of the tax due.

[5] Appellant complains of the fact that the appellee bought the tax certificates for $20.13 from the county when the amount due upon them was $51.74.   We fail to appreciate the force of the claim made.   Even though there were merit in the claim, we are precluded from passing upon the question for the reason that it was neither pleaded nor presented in any form to the court blow.

For the reasons stated the judgment of the court below will be affirmed; and it is so ordered.

HANNA, C. J., and ROBERTS, J., concur.