86 P.2d 599

### BULL v. MARTINEZ.
### No. 4423.

Supreme Court of New Mexico.
Jan. 9, 1939.

Luis E. Armijo, of Las Vegas, for appellant.

Crampton & Robertson, of Raton, for appellee.

BRICE, Justice.

The question is whether a tax title is valid, if the property involved was assessed in the name of a person with a Spanish surname and if notice of the sale at which such property was sold for taxes was not published in Spanish in a newspaper, as required by Sec. 4 of Ch. 27, N.M.L.1934, Sp.Sess., which is as follows:

"Each county treasurer in the State shall give notice of sale of the real property for delinquent taxes in Section 3 of this Act provided for, which notice shall be substantially in the following form: [Then follows form of notice.] * * *

"The notice first prescribed in this Section signed by the treasurer shall be posted in a conspicuous place in his office not less than 21 days prior to the date of sale, and shall remain so posted until the date set for sale. Copy of said notice shall be published once each week for two successive weeks in a newspaper of general circulation regularly published in the county; if there be no such newspaper published in the county the publication shall be made in a newspaper of general circulation in the county and published in an adjoining county. In counties where there shall be real property on which taxes are delinquent assessed in the name or names of persons with a Spanish surname, publication of a copy of the notice shall also be made at the same time in the Spanish language in a Spanish newspaper regularly published in the county, if any there be, and if no Spanish newspaper be published in the county then such notice in Spanish may be published in a newspaper the major part of the reading matter of which is in English and published in the county of general circulation in the county as above provided. * * *"

It is admitted by appellant that if the question stated is resolved against him, then appellee's title is good, and the judgment of the district court should be affirmed.

It is claimed by appellee, and so held by the trial court, that the failure to publish a notice in Spanish, as required by the statute, was not a jurisdictional defect, and was cured by Sec. 24 of Ch. 27, L.1934, Sp.Sess., which is as follows:

"In all controversies and suits involving title to property, claimed and held under and by virtue of a tax deed executed substan-

tially as aforesaid by the treasurer, the party claiming adverse title to that conveyed by such deed shall be required to prove, in order to defeat the said title, either that the said property was not subject to taxation for the year or years named in the deed, or that the taxes had been paid before sale, or that the property had been redeemed from the sale according to the provisions of this Act, and that such redemption was made or had for the use and benefit of the persons having the right of redemption, under the laws of this state; but no person shall be permitted to question the title acquired by deed of the treasurer, without first showing that he, or the person under whom he claims title to the property, had title thereto at the time of sale, or that title was obtained from the United States or this state after the sale, and that all taxes due upon property have been paid by such person, or the person under whom he claims title as aforesaid; * * *."

The parties agree, and correctly so, that if the failure to publish the notice of sale in Spanish is a jurisdictional defect; that is if the requirement is an essential step in the tax proceedings to the making of a tax title, then the sale was void; but if it was only an irregularity that could originally have been dispensed with by the legislature, it was cured by the curative provision quoted. This is the holding of this court in Maxwell v. Page, 23 N.M. 356, 168 P. 492, 5 A.L.R. 155. The question there was whether a sale made prior to the time fixed by the statute, was valid. We stated [page 493]:

" * * * The guaranty contained in the Fourteenth Amendment to the federal Constitution ·[U.S.C.A.Const.] against the taking of property without due process of law, and the guaranty contained in like provisions of our Constitution, is a guaranty that the essentials of taxation only shall be observed in the taking of the property. All other matters depend upon the lawmaking power of the state, and may be varied or changed as the legislative will of the state shall see fit to ordain. * * * The Legislature may prescribe, by law, what shall be essential and what unessential in taxation proceedings, subject only to the fundamental principle that a person whose property is to be subject to taxation must have notice and an opportunity to be heard as to the amount of the charge upon his property, or, in other words, that due process of law must be provided for. * * *

"Notice of every step in the tax proceedings is not necessary; the owner is not deprived of property without due process of law if he has an opportunity to question the validity or the amount of such tax or assessment, either before that amount is finally determined or in subsequent proceedings for its collection. 1 Cooley on Taxation (3d Ed.) 60. * * * The Legislature, however, provided, as has been heretofore pointed out, that no title acquired at any such tax sale should be invalidated in any proceeding, except upon the ground that the taxes had been paid before the sale, or that the property was not subject to taxation. This curative feature of the statute stands out conclusively against any technical objection to a

tax title. This provision, if it is to be given the force and effect which its language requires, prohibits the interposition of any objection to a tax title, except such as are named in the provision itself. All other directions and provisions in regard to the procedure to be employed by the taxing officers must yield to this provision, or it must be held to be of practically no force and effect. In view of the whole act we conclude that the Legislature intended that the curative feature of the statute should prevail over any irregularity which might occur in the tax proceedings. * * * *

"The question then is, Is the statute, as thus construed, violative of the constitutional guaranty against the taking of property without due process of law? As we have heretofore pointed out, the constitutional guaranty is applicable only to the substance and essentials of things, not to formalities and procedure. The essentials of taxation are the existence of the subject-matter which is to be subjected to taxation and its liability to the imposition of the tax, the assessing of the property for taxation, and the levying of the tax thereon. If, upon all of these subjects, the taxpayer has had notice and opportunity to be heard, he has had due process of law. It is not an essential in taxation proceedings that the state should proceed to enforce the collection of the tax in any particular way, or at any particular time. Therefore it is within the legislative discretion to give directions to the taxing officers to proceed to a sale in a certain way and at a certain time each year for the purpose of collecting the taxes due from the taxpayers. But the Legislature might well have provided that another and entirely different procedure should be resorted to for the purpose of the collection of the tax. These provisions are enacted in the interest of the state for the purpose of enabling it to promptly collect its public revenue. The manner of collecting the tax after it has, with due notice to the taxpayer, been fixed upon his property is a matter in which the taxpayer has no legal interest. * * *

"The courts differ upon the question as to what is an indispensable essential in taxation and what is not indispensable. If they agree upon this question, they all agree upon the question of the constitutionality of the statute. We hold that it is not indispensable under our statute to hold tax sales upon the very day appointed by statute, and that therefore the Legislature has power to provide, as it has provided, that an irregularity as to the time of sale shall not invalidate the title of the purchaser."

The Maxwell Case has been cited as authority by this court innumerable times; and we have held that the curative provisions mean "just what they say." Knollenberg v. State Bank of Alamogordo, 35 N.M. 427, 299 P. 1077; Williams v. Van Pelt, 35 N. M. 286, 295 P. 418; Witt v. Evans, 36 N.M. 365, 16 P.2d 60; N.H. Ranch Co. v. Gann, 42 N.M. 530, 82 P.2d 632.

 Of course it is assumed (and it is essential to a valid tax title) that the land had been assessed for taxes and that taxes had been levied against it (Maxwell v. Page, supra); and, as a sale is necessary to transfer title under our statutes which provide for the collection of delinquent taxes, that the land had been sold for taxes (Pace v.

Wight, 25 N.M. 276, 181 P. 430), and that appellee was the purchaser or his assignee.

The legislature could, without question, have provided for publishing the notice of sale in English only, or indeed have dispensed with any notice to the landowner; or the land might have been forfeited without a sale. Straus v. Foxworth, 231 U.S. 162, 34 S.Ct. 42, 58 L.Ed. 168; Nevin v. Bailey, 62 Miss. 433; Shawler v. Johnson, 52 Iowa 473, 3 N.W. 604; Callanan v. Hurley, 93 U.S. 387, 23 L.Ed. 931, all cited with approval in Maxwell. v. Page, supra.

We conclude that the failure to publish the notice of sale for taxes in Spanish was an irregularity only, and did not invalidate the title.

The judgment of the district court is affirmed.

BICKLEY, C. J., and ZINN, SADLER, and MABRY, JJ., concur.