110 P.2d 544

**HUGHES v. RANEY.**

No. 4592.

Supreme Court of New Mexico.

Feb. 1, 1941.

Rehearing Denied March 10, 1941.

O. E. Little, of Roswell, for appellant.

J. C. Compton, of Portales, for appellee.

SADLER, Justice.

We are asked to decide whether a county treasurer's failure formally to strike off and declare sold to the state on the fifth day of annual tax sales otherwise regularly held under L.1934, c. 27, all property on which no acceptable bid has been received denies the state the right to treat such property as sold to it for the purpose of issuing and assigning tax sale certificates thereon and, subsequent to expiration of redemption period, of issuing tax deeds thereto.

The question arose in a suit to quiet title originating in Roosevelt County. The plaintiff as record owner of the title to the land involved sued defendant who claims under a tax deed to the property allegedly sold for delinquency in payment of the 1934 taxes. The sale, if it was a sale, took place on December 6, 1935, pursuant to L.1934, c. 27. The tax sale certificate to the state was issued, as shown by its date, on August 14, 1936, and no redemption having

occurred, the tax deed here involved was issued on December 6, 1937, more than two years subsequent to the sale.

The single challenge to the validity of the tax title rests upon plaintiff's contention that there was no sale, a view accepted by the trial court. It rendered a decree quieting plaintiff's title to review which this appeal is prosecuted. The trial court's conclusion that there was no sale is based wholly on the fact that the county treasurer at the close of business on the fifth day of December, 1935, sales, did not formally strike off to the state all property not sold to private bidders. The question thus is narrowed to the extent that the parties are agreed the tax title is good if there was a sale and bad if there was none. The facts are not in dispute but the issue will be clarified by a further statement of the facts showing just how the sale, or pretended sale, was conducted.

The county treasurer on the first Monday in December, 1935, appeared at the front door of the county court house and by appropriate announcement opened the tax sale of real estate for delinquent 1934 taxes. He then returned to his office in the court house (the entrance to which was only twenty or twenty-five feet from the front door of the court house). Whenever a person came in desiring to purchase at the tax sale, if no one else were present, the treasurer simply issued the purchaser a tax certificate for the amount of taxes shown to be delinquent on the property. If anyone else were present, he would ask if there were other bidders for the property. If not, the certificate was issued to the lone bidder. This same procedure was followed on each of the five days of the sale, the treasurer first appearing at the front door of the court house at nine o'clock in the morning and then returning to his office and making sale there of such parcels of property as were acceptably bid for. But on the fifth and last day of the sale, at the close of business, the treasurer did not return to the front door of the court house and make the announcement: "All property not purchased by private bidders is hereby struck off and sold to the state", or that in substance. On the contrary, as testified by the treasurer, he "took it for granted that everything that was not sold to an individual was sold to the state". In due course and at odd times tax certificates would be issued to the state. There was no offer for sale at public vendue of any of this property thus treated by the county treasurer as "sold to the state" except as disclosed by his conduct of the sale just detailed. The soundness of the treasurer's assumption that all property not bid in by others was sold to the state without a declaration to that effect is the question we are called upon to decide.

While the defendant presents several assignments of error directed to the trial court's findings and conclusions and to its refusal of certain findings and conclusions requested by her, all may be resolved into the single claim of error that the court erred in concluding from admitted facts that there was no tax sale to the state of the land described in the tax deed. Much

of the argument in her brief is devoted to the effect of the curative provisions of section 24 and the two-year limitation period for assailing tax proceedings contained in section 25 of L.1934, c. 27. As we view the matter, however, if there was no sale, a jurisdictional defect is presented against which neither the curative nor limitation provisions of the delinquent tax law will avail defendant; and if there was a sale, then the tax deed on which she relies, as against the omission here assailed, is sufficient unto itself. So we are brought right down to the controlling consideration, the proper construction of L.1934, c. 27, § 8, the governing statute.

Section 6 of the act provides that the county treasurer shall appear in person or by deputy at the front door of the county court house at the time specified in the published and posted notice of sale and offer for sale at public vendue the property on which taxes are delinquent for the amount of taxes, penalties, interest and costs due thereon and that the sale shall be continued from day to day for five days. Section 7 prescribes the form of tax sale certificate to be issued to purchasers at the sale. So much of Section 8 as is pertinent reads: "Sec. 8. On the fifth day of the sale, all property on which no acceptable bid has been received, shall be sold to the State of New Mexico for the amount of the taxes, penalties, interest and costs due thereon."

What does the quoted language mean? Is it of such import that the treasurer's failure to close the sale at the end of the five-day period by formally declaring all property not sold to others is struck off to the state will invalidate all certificates subsequently issued by him to the state and assigned to unsuspecting purchasers? We do not think so. Nor do we think the statute lends itself to such a construction. Certainly, it could not have been thought by the legislature that the treasurer or his deputy would remain at the front door of the court house throughout the five-day period during most of which time, and except at isolated intervals, all of which time, none others would be present. Members of the legislature are practical men and they must have known that after opening the sale and caring for such bidders as were then present, he would return to his office where his records are kept and where he transacts business and there make sales from time to time as purchasers presented themselves. And if this practice was contemplated, they must have known that more often than otherwise, indeed, almost invariably, there, in his office, is where he would be found when the sales closed by operation of law in the waning hours of the fifth day thereof.

Could it, then, have been the intention of the legislature that the treasurer's failure to go to the front door of the court house and soliloquize, should invalidate the whole proceeding so far as the state's purchases are concerned? If so, it has failed to employ language compelling such a construction. On the contrary, this language yields itself more readily to a directly opposite meaning. We are forced to the con-

clusion that the true meaning of the language employed in section 8 is reflected when we supply the word "deemed" before the word "sold" so that the first sentence of said section will read:

"Sec. 8. On the fifth day of the sale, all property on which no acceptable bid has been received, shall be (*deemed*) sold to the State of New Mexico for the amount of the taxes, penalties, interest and costs due thereon."

In addition to considerations already mentioned another forceful one suggests itself. It is significant that the statute neither authorizes nor directs the district attorney or any other designated official to be present at the close of the sale and put in a bid on behalf of the state. Ordinarily, if not always, the "striking off" of property is the overt vocal act whereby the auctioneer or other person conducting the sale signifies his acceptance of a bid made. It is the formal response to a bid announced by another. But at these sales no person present makes a bid for the state. If the treasurer is to see a bidder he must find one in the statute. Looking to the statute he does find one—the state. The statute, Section 8, not only makes the state the bidder, but announces the amount of the bid, imposes the mandatory duty on the treasurer to accept it, leaving him shorn of all discretion in the matter and in legal effect accepts the bid for him. The property unsold to others at the close of the sale is sold to the state by operation of law. The treasurer cannot then forestall the effect of the statute even by an affirmative act on his part. Much less can he do so by mere silence—a failure to soliloquize: "Struck off to the state".

It follows that the judgment reviewed should be reversed and the cause remanded to the district court of Roosevelt County with a direction to set aside its judgment and enter one for the defendant on the cross-complaint interposed by her praying for a decree quieting title against the plaintiff.

It is so ordered.

BRICE, C. J., and ZINN, MABRY, and BICKLEY, JJ., concur.