113 P.2d 576

**KERSHNER et al. v. SGANZINI et al.**

No. 4594.

Supreme Court of New Mexico.

May 5, 1941.

Antonio M. Fernandez, Fred J. Federici, and George E. Remley, all of Santa Fe, for appellants.

W. A. Keleher and A. H. McLeod, both of Albuquerque, for appellees.

MABRY, Justice.

There is involved here the legality of a tax title to certain lands in Taos county. Upon suit by appellants to quiet title to several certain lode mining claims, appellees answered denying title in appellants and setting up ownership in and title to the claims by purchase through tax title on December 12, 1936, for 1935 delinquent taxes in the sum of $47, and seek to quiet title in themselves. Appellants by reply and answer to appellees cross complaint raise the issue of the validity of the tax title upon which appellees rely. The judgment was for appellees, on their cross-complaint, quieting their title. Appellants

rely upon three principal grounds for reversal, viz., (1) that there was no sale for 1935 taxes in 1936; (2) the conduct of the treasurer mislead appellants to their prejudice and constituted constructive fraud; and, (3) the assignment of the certificate by the treasurer was void and therefore the deed was void.

The following may be said to substantially set out the pertinent facts: That although sale was advertised and held (though probably in an irregular manner) in 1936 for the 1935 delinquent taxes, no certificate of sales were written up and filed as to the property in question or any other property for which said sale was held, until after December 15, 1938, and until more than two years (the period of redemption) had elapsed; that the certificate in question relied upon as the basis for the tax deed here involved, though dated December 12, 1936, was actually not written up or issued until December 15, 1938, at which time it was signed by the then county treasurer in the name of a former county treasurer no longer in office; that the tax deed upon which appellees' title rests and which was based upon the said certificate of sale was itself executed and delivered on February 17, 1939; that shortly before December 12, 1938, and within time to redeem from a sale of their property in 1936, appellants appeared before the county treasurer to ascertain "what taxes were due" on the property in question. They, together with the treasurer, examined the tax rolls and records, and appellants were then and there furnished by the treasurer with a statement of the amount of all taxes, including interest and penalty, due for the year 1935 and other years; and, that from an examination made of the books and records of the treasurer's office, it was ascertained that no notation or record of any sale of appellants' property for the year 1935 had been made upon the tax roll or otherwise. Furthermore, appellants were not advised by the treasurer of any outstanding certificate against the property (there being yet none in fact) nor were any questions asked nor was anything said by either the treasurer or appellants about a tax sale covering delinquencies for 1935; that in figuring and estimating and certifying to appellants the full amount of taxes, interest and penalties owing for the year 1935 and other years, no calculation was made by the treasurer of the statutory 2% *costs*, which invariably follow from sale and are required to be paid incident to redemption of the property by the owner after the tax sale (Section 20, Chap. 27, Laws 1934); that when the owner prepared to pay his 1935 and other taxes on the 16th day of January, 1939, he was then, for the first time, advised by the treasurer that there was an outstanding certificate of sale against his property for delinquency for the year 1935. Appellees, through their agent, secured the ante-dated certificate of sale and the deed based thereupon with full knowledge of the state of the record as to the tardy issuance of the certificate and deed, and the ante-dating of said certificate was in fact at the request and upon direction of the said agent. All facts were

sufficiently pleaded, sufficient proposed findings and conclusions were tendered by appellants, sufficient objections were taken to all adverse findings and conclusions, and ample assignments of error made, to properly raise the questions here for review.

In substance, appellants' contention is that, first, there was no sale of the property at all, which, it is conceded, is an absolute requirement to pass title by tax deed. Indeed, we held directly in the recently decided case of Hughes v. Raney, 45 N.M. 89, 110 P.2d 544, 545, hereinafter referred to, "If there was no sale, a jurisdictional defect is presented against which neither the curative nor limitation provisions of the delinquent tax law will avail defendant." In the second place, say appellants, if there were a sale, the conduct of the treasurer hereinbefore fully set out, mislead appellants to their prejudice and constituted constructive fraud which makes such sale, and the tax deed flowing therefrom, invalid; and, third, even if the sale were held in 1936 as alleged, it was void and the certificate was therefore in January, 1939, still in the hands of the treasurer and subject to redemption; further, that equity and good conscience require that the court look at the substance and not the form in relation to the acts of the parties and the date when they occurred rather than at any false recitals of the certificate and the tax deed, and rather than be bound by any prima-facie presumption of regularity ordinarily clothing such deeds, to determine whether constructive fraud is shown.

Appellants urge that the conduct of the treasurer in failing to make a record of any kind for more than two years after the purported sale, and in failing to advise appellants of such purported sale when they came to ascertain "what taxes were due" preparatory to payment, so misled appellants to their prejudice that the acts and omissions constituted constructive fraud, from the effects of which a court of equity will relieve. Whether this be true becomes a most important inquiry.

We have held that failure to make the notation "sold to the state", upon the tax rolls opposite the entry of the property (Sec. 11, Chap. 27, Laws of 1934) is not fatal, but is an irregularity taken care of by the curative statute. Chisholm v. Bujac, 27 N.M. 375, 202 P. 126. We have pointed out many irregularities in tax proceedings which are not jurisdictional. Bull v. Martinez, 43 N.M. 113, 86 P.2d 599; Maxwell v. Page, 23 N.M. 356, 168 P. 492, 5 A.L.R. 155; Williams v. Van Pelt, 35 N.M. 286, 295 P. 418; Baker v. Johnson, 35 N.M. 293, 295 P. 421; Eaves v. Lowe, 35 N.M. 610, 5 P.2d 525; N.H. Ranch Co. v. Gann, 42 N.M. 530, 82 P.2d 632; Foster v. Bennett et al., 44 N.M. 618, 107 P.2d 321.

We have also held that it is not important that a proper deed be executed at the time when he is first entitled thereto, since the purchaser from a tax sale is entitled, at some time, to have a good and timely conveyance, and the party complaining, in any event, would have no right to defeat the ultimate delivery of a good and sufficient deed. Witt v. Evans, 36 N.M. 365, 16 P.2d

60, 61. In this case we said: "If the deed in question were void, it would not alter the fact that, as assignee of tax sale certificates, appellant holds 'complete legal title' to the land. That status, if not sufficient to enable him to quiet his own title, would at least prevent his adversary from quieting his. * * * He would still be in a position to demand a valid deed."

It was further pointed out in Hood v. Bond, 42 N.M. 295, 77 P.2d 180, 185, that "the power vested in the treasurer to execute a tax deed is not exhausted until a deed is made in compliance with law." See the recent case of Scudder et al. v. Hart, 45 N.M. 76, 110 P.2d 536, recently decided, where we discussed rather fully the question of constructive fraud through acts and omissions properly to be charged to the county treasurer.

We also held in the case of Hughes v. Raney, 45 N.M. 89, 110 P.2d 544, 545, (recently decided but not yet reported) that no formality in announcing the sale to the state was required to evidence such a sale of all property unsold at the end of the five day period provided (See Sec. 8, Chap. 27, Laws ·1934), and that the word "deemed" would be read into the statute. To quote from this opinion: "We are forced to the conclusion that the true meaning of the language employed in section 8 is reflected when we supply the word 'deemed' before the word 'sold' so that the first sentence of said section will read: '"Sec. 8. On the fifth day of the sale, all property on which no acceptable bid has been received, shall be (deemed) sold to the State of New Mexico for the amount of the taxes, penalties, interest and costs due thereon.'"

We have said concerning fraud mentioned in Sec. 24 of Chap. 27, Laws 1934, where it is provided "In all cases where the owner of land sold for taxes shall resist the validity of such tax title, such owner may prove fraud committed by the officer selling the said lands, or in the purchaser, to defeat the same, and, if fraud is established, such title shall be void," that this "contemplates constructive as well as actual fraud, and [that such acts do] not necessarily imply any actual dishonesty of purpose, nor intent to deceive." Scudder et al. v. Hart, 45 N.M. 76, 110 P.2d 536, 539, supra. Also, in this case, in touching upon the importance to be attached to the inability or omissions of the tax official to furnish necessary information and their relation to the problem as constructive fraud, we quoted with approval the following language from 61 C.J. 1290, Sec. 1794, where it is stated:

"It is the duty of the proper officers to impart correct information to those seeking to redeem from tax sales, and an owner does not lose his right to redeem by permitting the appointed time to elapse, or paying less than the proper amount, or otherwise failing to comply with the directions of the statute, when this was caused by the fraud of a public officer, or by the latter's *inability* to *furnish necessary information,* or by his mistake, *negligence,* or *miscalculation,* or by misleading advice giv-

en by him; no act of misconduct by him can prevent the redemption." (Italics ours.)

We recognize, as already noted, many irregularities as curable by the curative statute hereinbefore referred to. So, without undertaking to say which, if any, of the irregular acts here complained of might not fall within the cases heretofore decided wherein we have held applicable and to be the answer, such curative statute, we go on to a discussion of another question.

Conceding, for the purposes of this case, that the failure of the treasurer either to indicate for the benefit of the property owner the sale of the property for taxes by proper notation on the tax roll at some time after the sale as provided by law, or to write up and file in the office proper certificates of sale within a reasonable time after sale, is not vital; and, further conceding that the request of the taxpayer for a list or statement of "taxes due" on his property for all years might not of itself constitute a request that the treasurer advise him as well of any outstanding tax certificates, what must be said of the contribution and force of all these matters taken together when we consider them under the circumstances of this particular case in their relation to the charge of constructive fraud, to the charge that appellants thus were prejudicially misled by the treasurer's combined acts of omission and commission: His "inability to furnish necessary information" or his "negligence or miscalculation"?

Moreover, we know that *costs* to the amount of 2% of total tax delinquent, as well as interests and penalties form a part of the obligation to be discharged by the taxpayer when he comes to redeem the property sold (Sec. 141-741, 1938 Supp., Sec. 20, Chap. 27, Laws 1934). The evidence is undisputed that when appellants inquired for a statement of all taxes due no such costs were estimated and included in the figures given them by the treasurer. This is merely one other incident of omission or mistake which, alone, might not be vital, but which may be considered in evaluating the equities appellants accumulate in their support. The failure of the treasurer to compute and advise them of any costs in connection with the 1935 delinquent taxes might, conceivably, have further misled appellants into the belief that no tax sale for such year was had.

In Cox v. Shipe, 44 N.M. 378, 102 P.2d 1115, 1116, it was probably implied, though not directly held, that redemption of outstanding certificates in the hands of the treasurer is nothing more than "paying taxes". We said in this case where the question of the duty and right of a holder of a tax sale certificate for any year to redeem from all outstanding certificates to avoid exposure of his own certificate to redemption by a rival holder of a certificate for another year's taxes, "The statute clearly contemplates that the certificate holder may pay * * * taxes delinquent on the property. It compels it before he may receive a deed. We think we should do violence to the language of the controlling statute to declare the holder of a tax certificate does not have an equitable

right in the property which entitles him to redeem."

We were there discussing and appraising the pertinent statute (Sec. 14, Laws 1934), upon which was bottomed the right of redemption, by one certificate holder from another, and which provides, among other things, for payment by the redemptioner of "all prior or subsequent taxes paid by the purchaser of the certificate and/or his assignee with like interest from the date such * * * payments were made."

In Cox v. Shipe, supra, we further pointed out in discussing the statutory requirements for redemption that: "It thus results that the holder of a tax sale certificate for any year, issued under authority of the 1934 act, must promptly redeem from all outstanding certificates or else expose his own certificate to redemption by some rival holder of a certificate for another year's taxes."

We were there saying, to employ other words, that such holder must pay all delinquent taxes, which means also that he must redeem all outstanding certificates, at least, such as are still held by the state, before he may receive his deed. Quite clearly we were making no distinction between paying delinquent taxes and redeeming from outstanding tax sale certificates.

While there is much authority to the contrary, we believe that the better reasoned cases support the view which we now definitely adopt, that, under circumstances like those here presented, redemption of tax sale certificates still held by the state is payment of taxes. See Marwalt Realty Co. v. Greene, 224 Wis. 1, 271 N.W. 648; Olson v. Caufield, 32 Idaho 308, 182 P. 527. Thus, it must be said, when the taxpayer inquired for the amount of the taxes he owed upon the property in question, he was inquiring of all taxes due and delinquent without the distinction that some delinquency was represented by unassigned certificates of sale in the hands of the county treasurer. Therefore, when we hold this to be the effect of the inquiry, then, in order to sustain appellants' contention we would have only to add the further observation that in good faith they made inquiry that they might pay all taxes due, and that they were thwarted in their effort to save their property by the constructively fraudulent omission on the part of the treasurer and the records he kept to impart the correct information. We have held that a taxpayer has a right to rely upon the representations and acts of the county treasurer. Fernandez Co. v. Montoya, infra. There is much authority to this effect. Bray, etc., Co., v. Newman, 92 Wis. 271, 65 N.W. 494; Gould v. Killen, 152 Wis. 197, 139 N.W. 758; Tug River Coal Co. v. Brewer, 91 Ky. 402, 15 S.W. 1117, 13 Ky.Law Rep. 1; Utah Lead Co. v. Puite County, 92 Utah 1, 65 P.2d 1190.

Notwithstanding the freedom with which we brush aside irregularities occurring in tax proceedings in construing and applying the curative provisions of our taxation statutes (Sections 23 and 25, Chap. 27, Laws 1934), the facts in this case present a most intriguing question and a serious chal-

lenge to us, as a court of equity, were we compelled to say whether, under the circumstances and in view of the several clear omissions on the part of the county treasurer to perform his duty in these several instances, this case does not fall outside the realm of those cases where irregularities there discussed were held not to be fatal. But, because of our disposition of another and a decisive question to be now discussed, we find it unnecessary to decide such point and we pass it.

An additional and controlling question is presented by appellants' challenge to the validity of the assignment of the tax certificate upon which the deed is based, *after* expiration of the two-year period of redemption. Sec. 23 of Ch. 27 of Laws of 1934, as amended by L.1937, c. 180, § 3, provides: "In all cases where the tax sale certificate upon property is sold to the State of New Mexico and such certificate of sale has *not* been sold or assigned by the treasurer *before* the expiration of the period of redemption, the county treasurer shall immediately upon the expiration of the redemption period execute a tax deed to the State of New Mexico * * *." (Italics ours.)

L.1934, c. 27, § 12, provides that "when issued to the state, such certificate may at any time thereafter and *before the redemption period of two years* shall have expired, be sold and assigned by the county treasurer * * *." (Italics ours.)

Appellants and amicus curiae urge that since the treasurer did not sell or assign the certificate in question prior to the expiration of the period of redemption, or prior to Dec. 12, 1938, he had no right to sell and assign the same thereafter; that the state was then the only party authorized to deal in the certificate or the title. They point to a distinction between the situations presented in the cases of Hood v. Bond, 42 N.M. 295, 77 P.2d 180; Witt v. Evans, 36 N.M. 365, 16 P.2d 60, and Cavender v. Phillips, 41 N.M. 235, 67 P.2d 250, referred to by appellees and relied upon. The distinction is clear. In the aforementioned cases we did not have a taxpayer with a right or interest questioning the timeliness or regularity of an assignment. Appellants in the case at bar do not stand in the position of a taxpayer who has lost all rights and cannot complain of irregularities thereafter occurring. Obviously, if he has no rights in the premises a taxpayer would have no interest in the manner in which the certificate purchaser attempts to perfect his title. Hood v. Bond, 42 N.M. 295, 77 P.2d 180. But here a right is claimed which may not be defeated by an ultra vires act of the treasurer in assigning the certificate *after* the expiration of the period of redemption. Here, it is pointed out, assuming a sale in 1936 as contended for by appellees, a right to a deed after the expiration of the two-year period of redemption matured in the state and with it is coupled the right of appellants to a preference in the repurchase of the property at a sale by the state, citing L.1934, c. 27, § 30, as amended by L.1937, c. 215, § 1.

Appellees urge that Ch. 215 of Laws 1937, giving a preferential right to repurchase to the taxpayer where the state takes title and there is no valid assignment, was not in force at the time of sale, in 1936, and therefore does not control. Without deciding whether there be a distinction between the question involved in N. H. Ranch v. Gann, 42 N.M. 530, 82 P.2d 632, wherein we stated the law in force at the time of sale governs the validity of a tax sale, and that here presented which involves the question of the right of repurchase, we need only point out that, nevertheless, like preferential right is given by Sec. 30, Ch. 27, L.1934, which L.1937, c. 215, amends and which appellees will concede was in force at the time of sale.

We call attention, incidentally, to Pace v. Wight, 25 N.M. 276, at page 288, 181 P. 430, at page 434, where we said in discussing the law applicable to the taxpayer's right of redemption that the "Legislature may pass a retroactive law operating on property belonging to the state, and such law will not be unconstitutional so long as private rights are not infringed."

We have always favored a liberal construction of the redemption statutes in favor of the land owner. Gammill v. Mann, 41 N.M. 552, 72 P.2d 12; State ex rel. McFann v. Hately, 34 N.M. 86, 278 P. 206, 208; Fernandez Co. v. Montoya, 42 N.M. 524, 526, 82 P.2d 289, 118 A.L.R. 573.

The treasurer was without authority to assign the certificate in question after Dec. 12, 1938, even assuming all prior acts with reference to the certificate and touching upon the sale to be immune from attack. The state became the owner of all unassigned tax sale certificates after the expiration of two years from Dec. 12, 1936, and there was enjoined upon the county treasurer of Taos County the duty to *immediately* execute deeds to the state. Sec. 23, Chap. 27, Laws of 1934, as amended by Chap. 180, Laws of 1937. The general rule is that "Assignments of tax sale certificates must be made at or within the time prescribed by law." 61 C.J. 1323, § 1850. See Lambert v. Scott, 53 Colo. 357, 127 P. 142; Empire Ranch & Cattle Co. v. Neikirk, 23 Colo.App. 392, 128 P. 468, holding assignment of tax certificate made subsequent to the expiration of the period within such assignments are authorized, is wholly void.

We held in Kyle v. Chaves, 42 N.M. 21, 74 P.2d 1030, that an assignment of a tax certificate in violation of the moratorium provided by the legislature was voidable if the taxpayer had a right to complain. Relief was denied in this case, however, because of the failure of the taxpayer to perform any conditions provided by the legislature for his relief. Appellants are in the position of interested parties and their rights will be protected. The state is not complaining that it has not received the deed which the treasurer was by law required to execute immediately upon the expiration of the period of redemption. Appellants' rights, nevertheless, under the circumstances, will be protected

against the unauthorized assignment of the certificate and the execution of the deed in question.

So it appears that altogether aside from the matters urged upon us as constituting constructive fraud by the county treasurer, if his action in assigning the certificate after his power to do so had been exhausted was not ultra vires and void, as we say it was, such belated assignment would nevertheless deprive the taxpayer of a substantial right (a preferential right to purchase from the state) and thus constitute a fraud practiced upon him.

Appellees are, therefore, strangers to the title because they hold under a deed executed without authority of law. It is based upon a tax certificate which the treasurer had no authority to sell or assign after Dec. 12, 1938, but which, nevertheless, he did attempt to sell and assign thereafter. Whatever right the state might have to resist redemption by appellants is of no concern of appellees. The state is not a party here; and it is not resisting appellants' claim. Aside from other considerations and conceding the force of appellants' argument of other claims of error, heretofore discussed but not decided, our disposition of the point we are now treating must determine the appeal in their favor. The power, and likewise the duty, of the treasurer to issue the deed to the state, which, as we have said, should have been issued immediately upon expiration of the two-year period of redemption, still exists.

It follows from what we have said that the trial court was in error. Its judgment should be reversed and the cause remanded to the district court of Taos County with directions to set the same aside and for such further proceedings, not inconsistent with the views herein expressed, as shall seem meet and proper.

It is so ordered.

BRICE, C. J., and ZINN, SADLER, and BICKLEY, JJ., concur.