142 P.2d 539

**ARAGON et al. v. EMPIRE GOLD MINING & MILLING CO. et al.**

No. 4743.

Supreme Court of New Mexico.

Oct. 25, 1943.

Edward D. Tittmann, of Hillsboro, pro se, for plaintiffs in error.

BICKLEY, Justice.

This is a suit in equity wherein the plaintiffs (defendants in error) as successors in interest of the Empire Gold Mining & Milling Company, seek to prevent defendant (plaintiff in error) Edward D. Tittmann from redeeming a junior tax sale certificate; for the cancellation of the tax sale certificate held by said Tittmann, and that defendant Aragon, the Treasurer of Sierra County, be enjoined from issuing a tax deed upon the certificate held by Tittmann.

The case is here upon writ of error sued out by plaintiff in error Tittmann.

The defendants in error have filed no brief and the case was not argued orally.

From the record we divine that the case presents a public interest question in that our decision may afford a guide to the tax authorities in similar situations. We have therefore made considerable research without the aid of defendants in error.

The pertinent facts are as follows: The Empire Gold Mining & Milling Company, hereafter referred to as the Mining Company, was the owner of a 5 acre millsite in the N½ of the NW¼ of Sec. 9, Twp. 16 S, R. 7 W, NMPM in Sierra County, N. M., which appeared upon the tax rolls of that county for the year 1935 under rendition by and in the name of that corporation as mineral lands at a valuation of $5 an acre.

Neither the Mining Company nor any one in its behalf paid the taxes so assessed against it for the year 1935.

However, one Cunningham, for the year 1935, among other real estate, rendered the N½ NW¼, Sec. 9, Twp. 16 S, R. 7 W, NMPM in school district No. 2, Sierra County, N. M.

This tract was included in an assessment against several thousand acres as belonging to Cunningham and was assessed as grazing land at a valuation of $1.50 an acre.

Cunningham did not own and had no taxable interest in the 5 acres constituting the millsite which was owned by the Mining Company and was included in his rendition and payment by mistake.

The assessments against the two subjects of taxation were made each for a different classification of land although the 5 A. millsite was within the exterior boundaries of the tract rendered by Cunningham.

Cunningham paid the taxes so assessed against him for the year 1935.

The Treasurer sold at tax sale the millsite property assessed to the Mining Company for the year 1935, and on March 18, 1937, assigned the tax sale certificate No. 372 covering said sale to the defendant Tittmann.

The trial court made the following conclusions of law:

"1. That the assessment against M. H. Cunningham and the Empire Gold Mining & Milling Company each covering the N½ NW¼ Sec. 9 Twp. S.R. 7 W. NMPM, *constituted a double assessment* upon the 5 A. described in the assessment of the Mining Co. for the year 1935.

"2. That the payment by Cunningham of the taxes upon the N½ NW¼ Sec. 9 Twp. 16 S.R. 7 W. NMPM, first half on Nov. 30th, 1935, and second half on April 9th, 1936, was prior to the delinquent date of 1935 taxes.

"3. That the sale by the County Treasurer of the 5 A. under the assessment against the Empire Gold Mining & Milling Co. for 1935, was void and the tax sale certificate No. 372 issued on said sale was void.

"4. That payment by Cunningham of taxes upon the entire N½ NW¼ Sec. 9 Twp. 16 S.R. 7 W. NMPM for the year 1935, *was payment of the taxes upon the 5 A. millsite of the Empire Gold Mining & Milling Co.* as being located in the N½ NW¼ Sec. 9 Twp. 16 S.R. 7 W. NMPM, for the same year of 1935." (Emphasis supplied.)

Whereupon the court decreed that the Treasurer cancel as void tax sale certificate No. 372 and permanently enjoined him from issuing a tax deed upon said certificate and that he show upon the tax rolls for 1935 "that the taxes upon said 5 A. millsite assessed in the name of the Empire Gold Mining & Milling Co. was *paid* by M. H. Cunningham for said year under his individual assessment."

We think the trial court erred.

While many references are made in the record to "double assessment" we think little need be said about it. There was only one valid assessment and that was against the Empire Gold Mining & Milling Company and its 5 A. millsite. The assessment against Cunningham of the 5 acres upon which the millsite is located was a void, or at least a voidable, assessment. Cooley on Taxation, 4th Ed., Sec. 1096.

We are not unmindful of our holdings in Foster v. Bennett, 44 N.M. 618, 107 P.2d 321, but we have a different situation in the case at bar.

■ No one is here claiming any rights under the assessment of the real estate to Cunningham. Hence the curative provisions of Sec. 76-723, Code 1941, have no application even if they would be applicable in case of an attempted sale under the Cunningham assessment, had Cunningham's taxes not been paid and the land listed by him gone to sale.

■ Even under these curative provisions, in the case of sale of land assessed to unknown owners the land must have been "sufficiently described on the tax rolls." Suppose Cunningham had not paid his taxes and the property assessed against him had gone to sale. Would a certificate of sale of the whole Cunningham tract, including the 5 A. tract belonging to some one else and not particularly described, carry as good a title to the falsely included portion as a tax sale certificate of a sale of a 5 A. tract rendered in the name of the true owner and specifically and definitely described?

■ "Double taxation" is the imposition of the same tax, by the same taxing power, upon the same subject matter. See City of Philadelphia v. Heinel Motors, 142 Pa.Super. 493, 16 A.2d 761. We think this definition is applicable also to "double assessment."

■■ Furthermore, the Mining Company would not have been in a position to complain of such overlapping of assessments for 1935 because it did not pay its taxes for that year. Cooley on Taxation, 4th Ed., Sec. 227 says: "The only person who is entitled to complain of a double assessment is the one who is made to bear

more than his proportion of the burden of taxation. One complaining must show that he has paid one of the taxes before he asks to be relieved of the other."

█ It seems to be the general rule that one who by mistake pays taxes of another, cannot recover same from a person benefited by payment. See Annotations 61 A.L. R. 587, 592; 91 A.L.R. 389. The Supreme Court of the United States in Iowa Homestead Co. v. Des Moines Nav. & R. Co., 84 U.S. 153, 17 Wall. 153, 21 L.Ed. 622, decided that where taxes which should have been paid by the defendants were paid by a third party without the former's request or assent, that the taxpayers' refusal or neglect of such payment did not authorize contestants of his title to make him their debtor by voluntarily stepping in and paying such taxes.

So, if the Mining Company could claim the benefit of the payment by Cunningham of a part of its taxes due on the millsite for the purpose of defeating the tax sale certificate held by Tittmann it would be able to eat its cake and have it too, which would be inequitable.

We have found but few decisions of other courts which bear upon such a situation as exists in the case at bar. There is an annotation in 26 A.L.R. 622 on "Tax title as affected by fact that tax had been paid before sale" and sub-division E thereof treats of cases as affected by payment by other than owner in person. These cases arose usually where there were two assessments of the same land *under the same claim of title* for the same year, and the holdings usually are that under such circumstances one payment of the taxes under either assessment is all that the state can require.

The Supreme Court of West Virginia has so ruled, but on the other hand the same court in circumstances like those of the case at bar has taken a contrary position. In Bailey v. McClaugherty, 48 W.Va. 546, 37 S.E. 701, the court decided:

"1. P. sells and conveys a piece of land to B., who has himself charged therewith on the land books, and pays the taxes thereon for one year, but the next year fails to pay the same. The land still remains charged to P., and he pays the taxes thereon for the year in which B. fails to pay. The land is returned delinquent in the name of B., and sold, the purchaser in due time acquiring a deed therefor. *Held,* that the fact that the taxes were paid by P. will not render said delinquent sales, and the conveyance in pursuance thereof, void and ineffective.

"2. It is the duty of the owner of land to have it charged to himself on the land books, and to pay the taxes thereon. His failure to comply with this duty renders the land liable to be returned delinquent and sold."

Brannon, J. (concurring) said:

"My reason for the decision in this case, given in short space, is that the law requires the assessment of the land in the name of its present owner, not in that of a former owner. If assessed in the name of

the present owner, assessment in the name of the former owner is simply void. Yancey v. Hopkins, 1 Munf. [Va.], 419; 1 Blackw. Tax Titles, § 257. Therefore, a sale in the name of that true owner must pass to the purchaser that owner's title, because the statute (Code, c. 31, § 25) says that the purchaser shall get such title as was vested in the person charged with the taxes, and payment of taxes in the name of the former owner, who has no title, cannot avert such result,—cannot deprive the purchaser of the benefit of a regular sale under an assessment in the name of the true owner. A valid thing cannot be nullified by a void thing. At this term we decided that payment in the name of the true owner is effectual to render void a sale in the name of the former owner. Boggess v. Scott [48 W.Va. 316], 37 S.E. 661. As payment in the name of the true owner has such effect, so, conversely, would a sale in his name be valid. If the land had not been charged in the name of the true owner, an assessment and sale in the name of the former owner would pass title, though that former owner had no title, but that is only because the statute gives it that effect in such instance."

The question of "who may or should make payment" is discussed by Cooley in his work on Taxation, 4th Ed., Sec. 1260, where after including those who would be affected injuriously by a sale says: "Whether any third person may make payment is not so clear; but as the state is interested only in obtaining the revenue it has called for, it would seem that, before any sale,

and consequently before any rights of third parties have intervened, any mere volunteer may pay the tax if he chooses; and the payment would be effectual so far, at least, as to terminate the lien of the tax upon the land."

The observations of Mr. Cooley, last quoted, overlook the importance of the stability of tax titles through which the state is enabled to collect its revenue. That end seems to be the purpose of the curative provisions in our tax statute. In Barnes v. Bee, C.C., 138 F. 476, 486, it was said: "In fact, I believe that possibly as strong an excuse or reason as could be urged for the enactment of the curative statute referred so frequently to herein was the fact that, owing to the persistent and almost universal neglect and violation of law of the officers charged with making tax records it became generally current that no sale would stand, and the purchaser would be sued, and have his deed set aside, and heavy costs to pay, whereby citizens were deterred from buying."

The court quoted the West Virginia Court as saying that the purpose of curative statutes was "to render these tax sales efficient to collect delinquent taxes and confer upon the purchaser a substance, and not a shadow."

In Black on Tax Titles, Sec. 161, referring to Judge Cooley's statement above quoted it is said: "But probably the more conservative rule would restrict the class of persons who are entitled to stop a tax sale by making payment of the taxes,

so as to make it practically co-extensive with the category of those who, from their interest in the land, or their fiduciary relation to the owner, are incapable of acquiring a valid title by purchasing at the sale, or at least with the class of persons privileged to redeem the property from the sale."

We are disposed to this view. Our statute is very liberal as to the scope of those who may redeem. See Cox v. Shipe, 44 N.M. 378, 102 P.2d 1115.

Cunningham, who was an entire stranger to the title of the 5 A. millsite assessed to the Mining Company, was not a person privileged to redeem it from the sale. He had nothing to protect. The description of the 5 A. millsite was not apparent from the rendition made by Cunningham. The Iowa Supreme Court has decided that a party having no interest in property could not redeem it from a tax sale and that such redemption did not divest the title of a tax purchaser or inure to the benefit of the real owner. Byington v. Bookwalter, 7 Iowa, 512, 74 Am.Dec. 279; Penn. v. Clemans, 19 Iowa, 372.

Turning to the law governing "payment" generally, we find a division of authorities. It is held by some courts that where the demand of a creditor is paid with the money of a third person not himself, a creditor, without any agreement that the security shall be assigned or kept on foot for such party's benefit, the demand is extinguished. Other courts disapprove this view. See note. "The effect of payment of a debt by a volunteer or stranger to the original undertaking." 23 L.R.A. 120. And see 48 C.J. "Payment", Sec. 3 where it is said:

"A. Who may make Payment. Payment may be made by the primary debtor, and may be made by persons secondarily liable under circumstances considered elsewhere in this work. Any one of two or more joint debtors may pay a debt for which they are jointly liable.

"Stranger or volunteer. The mere delivery of money or property by a stranger to an obligation does not discharge the debt or inure to the benefit of the debtor, except when it is so provided by statute;"

The Supreme Court of Maryland held in Swan v. Patterson et al., 7 Md. 164: "An equitable assignment in favor of a surety, cannot be effected unless he has paid the *entire debt* of the creditor: the principles of substitution require payment *in full* of the debt on which the equitable assignment is claimed."

We think the language in Sec. 76-726, Code 1941, "or that the taxes had been paid before sale" does not mean payment of a part of the taxes, but of the whole of them. The curative provision of which the language last quoted is a part is intended to be drastic and we see no reason why it should be relaxed so as to render void a tax sale certificate issued upon a sale of property upon which an unpaid part of taxes are due and delinquent.

We can see a danger to the collection of the revenues of the state if the view of the trial court were the law.

If the learned chancellor was correct, the result would be the same if the 5 A. millsite belonging to the Mining Company were valued for taxation at $25,000 instead of $25. If the state were to be deprived of its revenues accruing from such millsite and the tax title following delinquency defeated merely because a stranger to the title and to that specific assessment returned the naked land at $1.50 per acre, an avenue for confusion and perhaps of fraud would be opened up which would be detrimental to the processes of collection of taxes.

It is our view that the Mining Company not having paid its taxes for 1935 and having suffered its millsite to go to sale and not having redeemed it ought not now be heard to say that the holder of the tax sale certificate who subsequently paid the taxes for 1936 does not have a right to redeem from subsequent delinquency and sale and secure a tax deed upon the sale, upon the highly technical ground that Cunningham inadvertently listed the same acreage under a different classification, and paid a *part* of the taxes the corporation owed the state. The equities attend the plaintiff in error.

It should also be noticed as having a bearing upon plaintiff's action in equity that they were rather late in commencing their suit. The tax sale through which the defendant Tittmann claims was had on December 11, 1936. The present action was commenced on the 13th of October, 1941. Sec. 76-727, Code 1941, provides: "Any ac-

tions to test the validity of any proceedings in the appraisement, assessment or levying of taxes upon any land, city or town lot, or parts thereof or other property and all proceedings whereby is sought to be shown any irregularity of any officer, or defect or neglect thereof, having any duty to perform, under the provisions of this act or under the laws of this state, relating to the assessment and collection of delinquent taxes, or proceedings whereby it is sought to avoid any sale under the provisions of this act, or irregularity or neglect of any kind of officer having any duty to perform under the provisions hereof, shall be commenced within two (2) years from the date of sale, and not afterward. (Laws 1934 (S.S.), ch. 27, Sec. 25, p. 94.)"

Whether upon the ground of laches or otherwise this statute would seem to support the defense made by the plaintiff in error Tittmann.

What we have said is sufficient to dispose of the case at bar in favor of the appellant. We think, however, that it is appropriate to say that it is our opinion that the language of the curative provision contained in Sec. 76-726, Code 1941, "or that the taxes had been paid before sale", means that the taxes have been paid by some one who is entitled to pay them, which would include besides the owner, or one acting in his behalf, any others whose interests would be affected injuriously by a sale, either because of liens they may have or of contract relations, and those who

would be privileged to redeem from tax sales.

It follows therefore that the decree of the trial court must be and is reversed and the cause remanded with directions that the district court enter its decree in favor of the defendant Edward D. Tittmann, and with appropriate directions to the County Treasurer of Sierra County not inconsistent with the views herein expressed.

It is so ordered.

SADLER, C. J., and MABRY, BRICE, and THREET, JJ., concur.