151 P.2d 743

**TAYLOR v. SHAW.**

No. 4851.

Supreme Court of New Mexico.

Sept. 13, 1944.

Frazier & Quantius, of Roswell, for appellant.

George L. Reese, Sr., of Roswell, for appellee.

MABRY, Justice.

Appellant Taylor brought suit to quiet title naming as defendant appellee Shaw, the holder of a tax deed to certain property located in an addition to the city of Roswell, based upon delinquent and unpaid taxes for the year 1938. A demurrer interposed to appellant's complaint was sustained and this appeal follows.

The issues involved are reasonably simple. Appellant admits in his complaint that he did not pay the taxes for the year in question, but would defeat the tax deed upon the ground: (1) Fraud on the part of the tax authorities and the appellee, purchaser of the tax title. (2) That appellant was misled by information secured from the County Assessor to the effect that the taxes had been paid by another for which reason he did not attempt to assess or pay taxes for the year. (3) That, in any event, since there were improvements upon the land (although permanent in character) which had not been assessed for the year in question, and were not taken into consideration in the levying of the tax for which the property was sold, no title to such improvements could have passed to appellee even if title could be said to pass as to the realty.

While appellant seems to rely upon fraud in the handling of this matter by the County Treasurer and on the part of the purchaser of the tax title, no facts alleged amount to fraud. The complaint alleges among other things not necessary to notice, that both the Treasurer and the purchaser knew the address of appellant, that the pur-

chaser was anxious to get possession of the lot in question, and that each of them should have made some effort to reach appellant and advise of the existing situation when the tax was unpaid upon the property and it was about to be conveyed to a purchaser at the delinquent tax sale. No fraud is here pleaded. Certainly the purchaser owed no such duty, and nothing being alleged as to conduct on the part of the County Treasurer which would support a finding of fraudulent conduct, no cause of action in this respect was pleaded. Appellant alleges that he received no notice of the delinquency, and of the purpose to sell or convey. We have said there is a presumption that notice of tax sale and to redeem was given. In view of the curative statute, failure to give, or of the tax payer to receive, such notice will not invalidate the sale. Witt v. Evans, 36 N.M. 365, 16 P.2d 60; Hood v. Bond, 42 N.M. 295, 77 P.2d 180.

The curative statute is pretty comprehensive and the defenses which may be offered to defeat a tax deed are limited. Succinctly stated they are: That the property was not subject to taxation or that the taxes had been paid before sale, that the property had been redeemed from the sale for the benefit of the persons having the right of redemption or because of fraud on the part of the party selling or the purchaser. 1941 Comp. Sec. 76-726.

■ Appellant relied upon erroneous advice and that from one to whom fraud, actual or constructive, could not, under the circumstances pleaded, be shown. It was

the taxpayer's duty to render his property for taxation. We said in Aragon v. Empire Gold Mining & Milling Co., 47 N.M. 299, 142 P.2d 539, 542:

"It is the duty of the owner of land to have it charged to himself on the land books, and to pay the taxes thereon. His failure to comply with this duty renders the land liable to be returned delinquent and sold."

Appellant seems to place reliance upon the allegation of his complaint that he was informed by the County Assessor when he made inquiry "concerning the payment of taxes" that no taxes were due on this property for the reason that it was acreage land and that the former owner "had paid the taxes thereon, on an acreage basis." We understand, of course, that the owner of the land sold for taxes may defeat a tax title by proving fraud committed by the officer selling the land, or on the part of the purchaser. 1941 Comp. Sec. 76-726. But appellant has proven fraud as to neither the "officer selling" nor the purchaser. It is not alleged that any inquiry was ever made of the County Treasurer, the officer authorized by statute to sell property for delinquent taxes. His inquiry seems to have been directed only to the County Assessor who obviously had no authority to bind others by a statement of who had paid taxes on the land. The case would not come within the rule laid down in Scudder v. Hart, 45 N.M. 76, 110 P.2d 536, where the taxpayer who tried to pay his taxes was misled by information given by the County Treasurer

to the effect that no other or further taxes than those then being settled for were due, which was held to be constructive fraud. Upon the subject of tax sale and redemption right generally, see also: Foster v. Bennett, 44 N.M. 618, 107 P.2d 321; Hughes v. Raney, 45 N.M. 89, 110 P.2d 544; Kershner v. Sganzini, 45 N.M. 195, 113 P.2d 576, 134 A.L.R. 1290.

Had it been pleaded that the Assessor had refused to accept an assessment or to permit appellant to render his lot for taxation, another question would be presented, perhaps. But certainly appellant, the taxpayer upon whom devolves the duty of rendering his property for taxation each year, could not rely upon the Assessor's statement that someone else "had paid the taxes," although such a statement from the County Treasurer, whose duty it was to know whether taxes are paid or unpaid, would, perhaps, have presented a different matter.

■ The Assessor was no better circumstanced to advise as to who had "paid" their taxes than was any other person, excepting the County Treasurer whose duty it was to keep the books and receipt for tax payments and to know the state of the record in that respect. And the fact that the tax title had been acquired for an amount insignificant as compared with the value of the property is not sufficient to set aside a valid tax title. Scudder v. Hart, supra.

■ It does not become important that when the land was sold for the 1938 delinquent taxes that the assessment made was only for the land, without taking into consideration improvements thereon of the value of some $750, as thereafter fixed for 1941 and subsequent years.

It is alleged in the complaint that such improvements were placed upon the land in 1937 and 1938. But there is no allegation that the Assessor "found" such improvements to have been there, at the time the 1938 assessment was made, and to have been omitted from the tax roll; or that he knew then, or at the time of the sale, if that could make a difference, that there were such improvements and that they were not considered in fixing the value of the real estate. 1941 Comp. Sec. 76-703 is cited and relied upon by appellant. But it affords him no support in this circumstance. Tax sale deeds will not be invalidated because it might appear that the property so sold for delinquent taxes was not adequately valued for assessment purposes. Whatever improvements were made upon the land were not taken into consideration in fixing value here, it is true. The insignificant amount of the tax itself would show this. But that goes simply to an under-valuation and not to the regularity of assessment. The improvements spoken of are permanently affixed and were at all times a part of the realty.

■ The Assessor could, and should, if he finds the improvements to have been placed upon the property as alleged, and not theretofore valued, place them upon the tax rolls as "found" and omitted property for "any year or years," 1941 Comp. Sec. 76-703, that taxes might be collected thereupon.

But this in no way affects the tax deed, or makes of the improvements anything but that which they always were, and are, as we appraise the stipulation of the parties herein, a part of the real estate.

█ The parties agreed that the court should determine as a matter of law, in considering the demurrer, the nature of the fixtures upon their stipulation as to the character. The court properly held these to be permanent, and to go with the land. The stipulation reads:

"It is stipulated * * * that the residence house located on the lot in question was built upon a concrete foundation and was constructed for permanent use in connection with the premises, and it was intended that the house when built should be a permanent acquisition to the freehold, that the other improvements constructed upon the premises in question were built by the parties who put them there to be used in connection with the use and enjoyment of the premises and were adapted to the use and purpose for which they were attached to said premises, but such other improvements did not have any permanent foundation such as concrete or other permanent material but were attached to the soil."

See Patterson v. Chaney, 24 N.M. 156, 173 P. 859, 6 A.L.R. 90, for a discussion of what annexation to realty becomes a part thereof.

█ Appellant's assignment that the sale, or the attempted sale, of the improvements as a part of the land without their having been "assessed" for taxation constitutes a taking of property without due process of law, is without merit. Appellant points to no statute authorizing an assessment of permanent improvements separate and apart from the land itself; and we know of no such provision. Moreover, he indicates he is unable to find any case which would be direct authority in support of his contention in this respect. There may be some doubt whether appellant appropriately raised this constitutional question in the lower court, in which case we would not consider the point. State ex rel. Burg v. City of Albuquerque, 31 N.M. 576, 249 P. 242; Miera v. State, 46 N.M. 369, 129 P.2d 334. But, that which has already been said as to the improvements in question having become a part of the realty and with reference to the failure to include the improvements in fixing value being, under the circumstances, simply a matter of inadequacy of valuation, will suffice to dispose of this point, in any event. But, to give further notice to this point:

█ . The deed, we know, cannot be construed to include any greater extent, or other property, than that described in the assessment (61 C.J., Taxation, 1367, § 1943), yet it is equally well established that the general rule of construction as to property conveyed by a private deed applies in respect to the property conveyed by a tax deed. Blakeley v. Bestor, 13 Ill. 708; Spicer v. Howe, 38 Kan. 465, 16 P. 825; 61 C.J.,

1366, § 1942. Permanent improvements of course pass with the land conveyed without more than a description of the realty.

The complaint shows that appellant never listed his property at all for taxation. His excuse is, as hereinbefore shown, that he was told by the Assessor that another "had paid the taxes thereon," as acreage land. The lot was regularly listed by the Assessor in the name of appellant, when appellant himself had failed to return it; but the Assessor without knowledge, we must assume, of the improvements placed thereon a few months prior to the time of assessment, did not consider such improvements in making the assessment. Can appellant complain that the Assessor, in making the assessment and fixing the value of the lot in question, fixed a value too low, since it did not include any value as to the improvements? We think not. This does not present such a question as could arise were the improvements severable from the land; if it were permissible to assess and sell separately, permanent improvements and the land upon which it is situate. Permanent improvements for the purpose of sale and conveyance by tax deed, go with the land conveyed the same as in the case of a private deed, absent a controlling statute providing otherwise. And we have no statute providing a different rule. 61 C.J., § 1942, supra, and cases cited.

However severe the penalty imposed upon the taxpayer might, in this case, appear, the question resolves itself simply into one of a taxpayer failing to render his property for taxation; and this upon an inadequate excuse; and certainly with no actionable mistake or fraud to be charged to any public official who acted in the premises or advised appellant what he should do.

If appellant's position on this latter point be sound, then in any case where the assessment may have taken into consideration some, but not all, of the improvements for example, a subsequent sale for the non-payment of taxes on the land could always be attacked because some part of the improvements, though permanent in character, were omitted in the calculation of value for the purpose of assessment. The whole purpose of the law would thus be defeated. In Aragon v. Empire Mining & Milling Co., supra, we quoted with approval from other authority to the effect that the purpose of a curative statute was "to render these tax sales efficient to collect delinquent taxes and confer upon the purchaser a substance and not a shadow."

His failure to himself render the taxes at all, and his further failure to complain of the inadequacy of the assessment made by the Assessor, would bind him. We have said: "In failing to object on this ground to sufficiency of the description in the assessment, the plaintiff acquiesced in the view that the assessment met the requirements of the statute * * *." De Gutierrez v. Brady, 43 N.M. 197, 88 P.2d 281, 284.

We hold there was no omission to perform any of the essential requirements of taxation, although there may have been,

because of lack of knowledge on the part of the Assessor of the improvements on the land, an inadequate valuation fixed. But this is something of which appellant, under the circumstances, cannot complain.

These, and all other questions raised by appellant, are without merit. The trial court properly sustained the demurrer. Finding no error the judgment is affirmed, and it is so ordered.

SADLER, C. J., and BRICE and THREET, JJ., concur.

BICKLEY, Justice (concurring specially).

There is much to be said in favor of the doctrine established by the Missouri courts that in tax sales the consideration paid may be so grossly inadequate as of itself to amount to "fraud", requiring that sale and tax deed be set aside. See Johnson v. McAboy, 1943, 350 Mo. 1086, 169 S.W.2d 932.

As to the power of the court of equity in tax cases, we said in the case of In re Trigg, 46 N.M. 96, 121 P.2d 152, 154:

"As said in the Blatt case ([In re Blatt] 41 N.M. 269, 67 P.2d [293] 303, 110 A.L.R. 656): 'A court of equity may review upon facts specifically set forth showing the assessment to be *so excessive* as to be constructively fraudulent'. (Emphasis supplied.) See also, 61 C.J. 'Taxation' § 1128."

It is not readily apparent that if an assessment may be so excessive as to be constructively fraudulent a consideration paid at a tax sale may not be so excessively inadequate as to amount to fraud.

The policy indicated in our law governing sales of real property for delinquent taxes of not selling more than is necessary to realize the tax deed also lends support to this view.

It is true that so far as the express language of 1941 Comp. Sec. 76-704 is concerned, the county treasurer is authorized to sell property for delinquent taxes to the highest bidder provided the minimum proceeds are *not less* than the amount of taxes, penalties, interest and costs due thereon "except as otherwise provided by law." But as explained in the Missouri decisions, the equitable doctrine against confiscation of property even by the state through the process of selling it for delinquent taxes for a grossly inadequate consideration is superimposed on the statutes.

1941 Comp. Secs. 76-701 and 76-707 indicate that on the fifth day of the sale all property on which no "acceptable bid" has been received shall be sold to the State of New Mexico for the amount of taxes, penalties, interest and costs due thereon.

It is suggested that since the amount of the taxes, penalties, interest and costs due thereon is the minimum which the county treasurer is authorized to accept, it would be within his power to conclude that a bid by a prospective purchaser "other than the state" (§ 76-701) which is so grossly

inadequate as to shock the moral sense and outrage the conscience should not be regarded by him as an "acceptable bid" and that the property should be sold on the fifth day to the state. The question might be asked as to why the state should buy for such an inadequate consideration when others may not. The answer to this is to be found in the tax code which provides for the administration of property acquired by the state under tax deeds, and the right of the former owner to have the first and prior right to repurchase such property upon such terms as may be reasonable. It is apparent that there is quite a little difference to the taxpayer as to whether the property has been sold to the state or to one "other than the state." That such a theory of administration of our law relative to tax sales would be just to all concerned is noted by the Missouri Supreme Court in Bussen Realty Co. v. Benson, 1942, 349 Mo. 58, 159 S.W.2d 813, 818, where it is said:

"Finally, let us consider how the present law operates in conjunction with the rule. A workable and logical scheme ensues. No party to a sale under the law is hurt, nor do we believe that the effect of the law is minimized. The purpose of the law, of course, is to aid the State in the collection of its taxes. The State is not hurt. When a sale is made it receives its taxes. Additional taxes are collected upon the conveyance. A proceeding to set aside a sale for fraud does not affect these taxes so paid. The purchaser is not hurt. When he purchases at a tax sale he knows he will have to await at least the expiration of the term of redemption before he receives a deed. If the property is redeemed he is reimbursed for all money spent, with interest, higher than the prevailing rate and which may run as high as ten per cent, Sec. 11145. If before a conveyance is made the county collector finds the sale was invalid, he must reimburse the purchaser with interest, Sec. 11155. A person suing to set aside a conveyance both by established principles of equity and also by express statute must make a tender which will reimburse the purchaser, Sec. 11179. And see Hawkins v. Heagerty, [348 Mo. 914], 156 S.W.2d 642. The purchaser is protected under any circumstance. He cannot lose any amount he has paid but is reimbursed with interest. In addition, he may receive rental from the property under certain conditions, Sec. 11135. The purchaser knows that his deed is subject to attack if the provisions of the law have not been complied with. He must also be presumed to have some idea about the value of the property from the fact of his purchase. Consequently, if he is doubtful about the validity of his purchase because of a grossly inadequate consideration, he may, immediately upon receiving a deed, commence a suit to quiet his title, Sec. 11169. On the other hand he may do nothing and await possible action by the owner which the statute says must be brought within three years from the recording of the deed, Sec. 11177. Under the circumstances both the purchaser

who buys land at a tax sale for occupation and the purchaser who buys for speculation, have reasonable protection."

All of the foregoing is said more for possible future application than as being important in disposing of the case at bar. While I think the Missouri doctrine heretofore noted has great merit, yet it seems to me that in order for it to work in the manner I have heretofore suggested, the county treasurer would have to know the value of the property offered for sale in order to be charged with the duty of appraising whether the bid made by a prospective purchaser "other than the state" is in fact "grossly inadequate." There are no allegations in the complaint in the case at bar to indicate that the county treasurer had any knowledge of the value of the property except that shown by the tax records which did not disclose any improvements on the property. What makes the great disparity between the amount of the bid and the alleged value of the property rests in the fact that the plaintiff had put, as he says, $1500 worth of improvements on the property. It seems apparent that the plaintiff was at fault in not advising the assessor of these improvements so that the county treasurer might have become informed as to the value of the property. He who would invoke the equitable doctrine of the Missouri courts, as applied to tax sales, as in other cases in equity, should come in with clean hands. Since, though, to my mind the appellant's ground for relief based upon the equitable

doctrine heretofore outlined is the strongest he has, yet it is inapplicable because of lack of information in the hands of the county treasurer due to the plaintiff's own fault, I think he cannot prevail, and I therefore concur.